Henry G. LUHRING, Jr., and Alice Luhring; Lawrence R. Luhring and Reidun S. Luhring; and Henry G. Luhring and Dolly E. Luhring, Appellants,

v.

Clifford W. GLOTZBACH, District Director of Internal Revenue, Appellee.

No. 8528.

United States Court of Appeals
Fourth Circuit.

Argued March 22, 1962.

Decided May 28, 1962.

William C. Baskett, Norfolk, Va., (George H. Bowers, Jr., and Bowers & Baskett, Norfolk, Va., on brief), for appellants.

Giora Ben-Horin, Attorney, Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attorneys, Department of Justice.

Claude V. Spratley, Jr., U. S. Atty., and Roger T. Williams, Asst. U. S. Atty., on brief), for appellee.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

Separate suits were filed August 9, 1961 in the District Court against the District Director of Internal Revenue at Richmond, Virginia, by Henry G. Luhring, Jr., and wife, and by Lawrence R. Luhring and wife, and on August 10th by Henry G. Luhring, Sr. and wife, seeking to enjoin the collection of income taxes assessed against them in excess of the taxes reported by them on their several joint income tax returns for the taxable years 1957, 1958 and 1959. Temporary restraining orders were issued by the District Judge and subsequently the cases were heard on motions of the taxpayers for temporary injunctions, based on the allegations of the complaints, and on motions of the defendant to dismiss the complaints on the ground that they did not state a cause of action. The District Judge denied the motions for temporary injunction and granted the motions to dismiss. The taxpayers appealed from the adverse rulings and the cases were consolidated for the purposes of this appeal.

The gravamen of the complaints is that the deficiencies claimed for the taxable years were illegally assessed because the District Director, before sending deficiency notices to the taxpayers, failed to follow certain general procedural rules set forth in 26 C.F.R.—Internal Revenue Part 601 of Subchapter H, Internal Revenue Practice, prescribing the actions to be followed by agents of the Internal Revenue Service under the direction of the Commissioner of Internal Revenue, unless the procedure is interrupted by the imminent expiration of the statutory period for the assessment of the tax. The District Judge was of the opinion that the complaints did not disclose such special and extraordinary circumstances as to avoid the prohibition against suits to enjoin the assessment and collection of taxes contained in 26 U.S.C. § 7421. He also held that the failure of the agents to follow the usual procedures was fully justified by the imminent expiration of the statutory period for the year 1957; and he pointed out that the taxpayers could have had the benefit of the usual procedures if they had not refused the request of the examining agent for an extension of the statutory period. The facts set out in the complaints may be summarized as follows:

Henry G. Luhring, Sr., and his two sons, Henry G. Luhring, Jr., and Lawrence R. Luhring, are officers of the Luhr-

ing Motor Company, Inc., which is located in Norfolk, Virginia, where the taxpayers reside. Together with their wives, they filed timely joint federal income tax returns with the District Director at Richmond, Virginia, for the taxable years 1957, 1958 and 1959. C. H. McCoy, a Certified Public Accountant, prepared the tax returns of the Company and of Henry Luhring, Sr., for the years in question.

In March, 1960, Lawrence Luhring received a letter from the District Director requesting information with regard to the examination of his 1959 income tax return. On March 24, 1960, a conference was held at which he furnished the requested information and, thereafter, he received a further letter from the District Director, dated April 13, 1960, stating that the examination revealed no necessary change and that accordingly the return would be accepted as filed.

In October, 1960, Henry G. Luhring, Sr., received a letter from the District Director, dated the 20th of that month, requesting additional information concerning dependency exemptions claimed in his 1959 tax return. He referred the letter to C. H. McCoy, who asked that the case be transferred from Richmond to Norfolk.

On October 26, 1960, W. G. Grigg, an Internal Revenue agent under the supervision of the defendant, communicated with McCoy concerning examination of the income tax returns of the Luhring Motor Company for the years 1956 through 1959, and the returns of its officers, including the taxpayers, for the years 1957 through 1959. McCoy advised Grigg that he had prepared the returns of the senior Luhring but not those of the other taxpayers, that he did not represent the taxpayers, and that he had requested the transfer of the pending examination of the 1959 return of Henry, Sr., to Norfolk.

At a later meeting with McCoy on December 12, 1960, Agent Grigg gave McCoy a schedule of automobile operating expenses and rental values which he proposed to disallow as a corporate deduction and to include in the income of the taxpayers for the years 1957 through 1959. On February 20, 1961, Agent Grigg met with McCoy again and with Henry Luhring, Jr., at the Company and asked about dependency exemptions claimed by the senior Luhring on his 1959 return, and whether the taxpayers' wives owned any automobiles. Henry, Jr., told him that his mother had not driven in 20 years and that his wife did not own a car. Grigg did not then inquire about the returns of Henry, Jr.

On February 27, 1961, Grigg telephoned Henry, Jr., and Lawrence Luhring, and requested their consent to the execution of extensions of the period of limitations for assessment of the tax for the year 1957. They refused to grant the extensions, but offered their cooperation in the completion of the examination within the remaining month and a half of the statutory period. No request for extension was made of the senior Luhring.

Without further examination of the returns the taxpayers received statutory notices of deficiency dated March 22, 1961, demanding payment of additional taxes for each of the years 1957 through 1959.

Thereafter, Lawrence R. Luhring attempted to obtain an administrative hearing with the District Director, but the request was denied by letter dated March 27, 1961, explaining that jurisdiction rested with the Appellate Division in Richmond, to which the case had been transferred. That office, in turn, on March 30, advised him that the notice of deficiency had been sent after he had declined to extend the statutory period of limitations and that it was contrary to policy to consider such cases during the 90 day period in which a petition might be filed with the Tax Court.

In July of 1961 the taxpayers received, on Forms 17-A, notices and demands of

payment of the additional taxes assessed plus interest, as follows:

|  | 1957 | 1958 | 1959 |
|---|---|---|---|
| Henry G. Luhring, Jr. | $843.16 | $907.64 | $758.56 |
| Lawrence R. Luhring | 855.12 | 868.75 | 747.13 |
| Henry G. Luhring, Sr. | 632.67 | 656.98 | 532.07 |

On August 9, 1961 they filed the present actions.

▇ The taxpayers complain that the agents of the District Director ignored and violated the procedural rules set out in § 601.105 which were promulgated under the authority of 5 U.S.C.A. § 22. See 20 Federal Register 4621. Particularly, it is charged that the taxing authorities failed to comply with the provisions set forth in Subsection (b) (1), (3) and (4), and in Subsections (c) and (d) of § 601.105, as follows:

1. The agents did not examine, at the taxpayers' premises, the taxpayers' returns for the years 1957, 1958 and 1959, or their books and papers bearing on the matters required to be included in the returns, and did not afford the taxpayers an opportunity to agree with the findings of the examining agents.

2. The taxpayers were deprived of the right to an informal conference in the Auditing Department of the District Director, as provided by Subsection (c), which a taxpayer may have if he applies for it within 10 days after he is advised in writing that he may present his objections to the findings of the examining agent.

°3. The taxpayer was deprived of the benefit of the provisions of Subsection (d) which directs the District Director to send to the taxpayer a 30-day letter setting out the agent's determination and advising the taxpayer of his right to file a written protest within 30 days and to have a hearing in the Appellate Division of the region.

The taxpayers contend that these procedural rules were promulgated under the authority of Section 7805(a) of the Internal Revenue Code of 1954 and the Administrative Procedure Act, 5 U.S.C. A. § 1011, and were published in the Federal Register in accordance with 5 U.S.C.A. § 1002(a) of the latter act. They contend in effect that the rules have the force and effect of law and are mandatory in their operation and unless they are observed no valid assessment and collection of taxes can be made.[1]

In our view the procedural rules do not have this weight; and compliance with them is not essential to the validity of a notice of deficiency. The Statement of Procedural Rules, part of which is pertinent here, was promulgated and published in the Federal Register of June 30, 1955, 20 F.R. 4621, now 26 C.F.R., part 600, et seq. It was signed only by the Commissioner, Internal Revenue, and purports to be issued under R.S. § 161; 5 U.S.C.A. § 22, which reads: "The head of each department is authorized to prescribe regulations, not incon-

---

1. In their brief the taxpayers make the following argument:

"Clearly then, every procedural requirement set forth in a statement of procedural rules published pursuant to the requirements of the Act is mandatory as to any agency proceeding initiated after the effective date of the Act. Stated another way, procedures currently published in the Federal Register as required by the Act have the force and effect of law and are 'procedure required by law'. An agency cannot legally withhold such procedures or fail to follow such procedures in any agency proceeding. In the Statement of Procedural Rules, Section 601.106 (f) (1) it is recognized 'that an exaction by the United States Government, which is not based upon law, statutory or otherwise, is a taking of property without due process of law, in violation of the Fifth Amendment to the United States Constitution.' It would be a complete anomaly for Congress to require by the Administrative Procedure Act that procedural rules be filed in the Federal Register if the rules are not mandatory. The purpose of the Administrative Procedure Act would be completely thwarted if an agency could publish procedural rules in the Federal Register and employ or disregard such rules in agency action at will."

sistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it." This statute was originally passed in 1789 and codified in 1875 as section 161 of the Revised Statutes. Its purpose (as disclosed by the legislative history of its amendment in 1958–1958 U.S.Code Cong. & Admin. News, p. 3352) was to enable General Washington to get his administration under way by spelling out the authority of Government officers to set up offices and to file Government documents.[2]

The significance of the promulgation of the rules without the approval of the Secretary should not be overlooked. Section 7805, I.R.C., gave to the Secretary, or his delegate, authority to prescribe needful rules and regulations for the enforcement of the statute. Section 7802 provides for the appointment of a Commissioner of Internal Revenue by the President with such duties and powers as may be prescribed by the Secretary. Section 301.7085–1 of Part 301, Procedure and Administration, 26 C.F.R.—Internal Revenue, empowers the Commissioner, with the approval of the Secretary, to prescribe all rules and regulations for the enforcement of the Code. Since the procedural rules now under examination were promulgated without the approval of the Secretary they constitute rules laid down by the Commissioner for

the regulation of the affairs of his office rather than formal regulations with the force and effect of law; and they have no added authority by reason of the terms of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., as the taxpayers contend. Section 1002 of that statute requires the publication of the rules of an agency adopted according to law for guidance of the public, and Section 1011 grants every agency the authority to comply with the requirements of the statutes through the issuance of rules or otherwise. It is obvious, however, that the latter provision merely enables the agencies to comply with the statute and does not take the place of or modify Section 7805 from which the Secretary of the Treasury or his delegate derives authority to prescribe needful rules for the enforcement of the Internal Revenue laws.

■ Even if it should be supposed that the procedural rules have the same authority as if they had been issued by the Commissioner with the approval of the Secretary in strict conformity to Section 7805, their directory character would still be apparent. Obviously, they are rules to govern the conduct of the agents of the Internal Revenue Service in the performance of their duty to determine the correctness of the income tax returns of the taxpayers. They are carefully devised to avoid litigation in disputed cases by affording an opportunity to the taxpayer to agree with examining agents in adjustments of the tax shown on the return and by authorizing the

2. "The purpose of the 'Statement of Procedural Rules' ", according to Mertens (Law of Federal Income Taxation, Zimet and Silverstein Ed., Regulations, vol. **, I.R.S.Op.–p.3, Release 21, "Explanation of Procedural Rules"), "is to outline both for public consumption and internal guidance those rules which control the operation of the Internal Revenue Service in carrying out its prime function of administering and enforcing the Internal Revenue laws."

"*  *  * Notwithstanding their codification in the Code of Federal Regulations, and publication in the Federal Register, the 'Statement of Procedural Rules' *does not* constitute Treasury Decisions or Regulations. These rules are

accordingly signed by the Commissioner *without* the approval of the Secretary of the Treasury. On the other hand, current Revenue Service practice treats these Procedural Rules as having the 'status' of Regulations. The practical effect of this is to place them in superior position to any Rulings issued.

"Although Amendments to the Procedural Rules appear in the Federal Register, no procedure is followed whereby public commentary may be had protesting or commenting upon their content in proposed form after which the changes would be finalized. Present Revenue Service practice is to announce the Amendment in final form in the first instance." (ibid.)

representatives of the Commissioner to enter into compromises and settlements when complete agreement cannot be had. To this end, if a return has been audited and found to be incorrect the taxpayer is notified and given an opportunity to agree to the changes suggested by the agent and, if no agreement is reached, further informal conferences between the taxpayer and the Government agents may be had in the auditing office of the District Director and later with the Appellate Board of the District. Obviously, this pretrial procedure is of great value both to the taxpayer and to the Government in composing disputed questions of fact and law and avoiding the delay and expense of litigation; and it is so much to the interest of the parties that it is customarily employed. We think, however, that the rules are directory and not mandatory in legal effect, and they do not curtail the power conferred upon the Secretary of the Treasury or his delegate by § 6212, I.R.C. to send a notice of deficiency if he determines that there is a deficiency in the tax shown on the taxpayer's return.[3]

■ Moreover, in the particular case before us it does not appear that the agents failed to follow the procedural rules laid down by the Commissioner of Internal Revenue as to the year 1957. Subsection (f) of § 601.105 specifically provides that the course of administrative procedure, above described, may be interrupted by the imminent expiration of the statutory period of limitations. In this event the subsection provides that the District Director or other appropriate officer must dispatch a statutory notice of deficiency or take other appropriate action with a view to assessment even though the audit or conferences may then be going forth; and it suggests that the taxpayer execute an agreement of extension of the period of limitations to facilitate the procedure. The bills of complaint show that on February 27, 1961 the examining agent requested the Luhring sons to consent to the extension of the period of limitations for the assessment of 1957 tax, in accordance with § 6501(c) (4) of the statute, but they refused to do so. At that time the three-year period after the filing of the 1957 returns, which is allowed by § 6501(a) for the assessment of the tax, would have expired on April 15, 1961 under § 6501(b) (1). The taxpayer contends that on February 27 there was still ample time to process the return but in this respect we accept the finding of the District Judge that the expiration of the period was imminent and the tax authorities were justified in sending the notice of deficiency when the taxpayers refused to agree to an extension. In the absence of arbitrary conduct the decision to protect the interest of the United States by sending the notice of deficiency was a matter in the discretion of the Government agents.

■ It is true, according to the complaints, that Luhring, Sr. was not asked to consent to an extension of the period of limitations; but, since he undoubtedly had knowledge of the situation, the agents were justified in issuing the notices of deficiency upon the assumption that his attitude was the same as that of his sons. Similarly, orderly administrative procedure justified the issuance of the notices of deficiency for the years 1958 and 1959, although as to them the expiration of the period of limitations was not imminent, because the additions to the income for these years involved the same issues as the additions for the year 1957.

■ It is even of greater significance for the disposition of the case that the taxpayers have failed completely to show that they are entitled to the injunction

3. It is worthy of note that amongst the rules promulgated for the guidance of the Appellate Division by Section 601.106, Rule VIII provides for the participation of the Regional Counsel in a conference conducted by the Appellate Division in any case docketed in the Tax Court, thus indicating that a petition to review the determination of the Commissioner may be instituted in that court before the conferences in the Appellate Division have been concluded.

against the assessment and collection of the taxes. Conceding as they must that § 7421, I.R.C., prohibits the maintenance in any court of any suit to restrain the assessment or collection of any tax, they endeavor to show that the illegality of the tax had been established beyond dispute and that there are special and extraordinary circumstances which justify the injunction. For this purpose they rely on Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and the application of the doctrine of that case by this Court in Yoke v. Mazzello, 4 Cir., 202 F.2d 508, and Shelton v. Gill, 4 Cir., 202 F.2d 503. The nature of a case which would justify the court in issuing an injunction despite the prohibition of the statute is illustrated by the facts in Miller v. Standard Nut Margarine Co., where the Government attempted to collect a tax on a product under the Oleomargarine Tax Act although it had been previously determined by the courts and by the Commissioner of Internal Revenue himself that the act was inapplicable, and where the special and extraordinary circumstance was shown that the imposition of the tax with penalties would destroy the taxpayer's business. No such situation is found in the case at bar. The matter in dispute was whether certain automobile expenses and automobile rentals were personal to the taxpayers or were incurred in the operation of a corporate business which they controlled and were, therefore, deductible. The taxpayers allege in their bills of complaint that the expenses pertained to the business but this is merely their conclusion which is disputed by the Government and is not supported by any impartial determination. Obviously, the partisan opinion of the taxpayers does not establish the illegality of the tax for the purposes of injunctive relief.

■ Furthermore, the case is totally lacking in the "special and extraordinary circumstances sufficient to bring the case within some acknowledged heading of equity jurisprudence." (See Miller v. Standard Nut Margarine Co., 284 U.S.

509, 52 S.Ct. 263, 76 L.Ed. 422.) Not only was the illegality of the tax uncertain but the taxpayers had abundant means to test the validity of the assessment. They had an adequate remedy at law. They could have consented to the extension of the period of limitations and demonstrated their position in informal conferences with the tax authorities, or they could have filed a petition with the Tax Court to review the Commissioner's determination under § 6213, or they could have paid the taxes assessed and sued for a refund under § 7421. Neglecting all of these remedies they cannot now ask the court for an injunction.

Affirmed.