**The CLEVELAND TRUST COMPANY and A. Dean Perry, Executors of the Estate of Helen Wade Greene, Deceased, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. C 64–359.**

United States District Court
N. D. Ohio, E. D.

Nov. 29, 1966.

## MEMORANDUM

WILLIAM K. THOMAS, District Judge.

Defendant United States of America moves for summary judgment dismissing Counts II, III, and IV of the plaintiffs' complaint. Count I, not involved in the present motions, asks refund of an additional estate tax of $475,848.95 paid in full on May 22, 1963 by the executors of the Estate of Helen Wade Greene, deceased, and interest of $90,131.25 paid in full on August 12, 1963. Helen Wade Greene died on December 24, 1958.

The additional estate tax was assessed upon property in the amount of $1,322,-580.70 conveyed by the decedent, Helen Wade Greene, to a trust established by the decedent on August 15, 1957 for the benefit of her daughter Helen Greene Perry. The Commissioner of Internal Revenue added this trust property to the decedent's taxable estate, purporting to act under Section 2035 of the Internal Revenue Code of 1954, 26 U.S.C. § 2035 (1964). This addition increased the value of the combined taxable estate to $8,618,787.43. Originally the executors paid an estate tax of $3,172,328.88, computed on the estate without the addition of the trust property. This payment is not in litigation. On grounds other than the merits, Counts II, III, and IV claim illegality of the assessment and collection of the additional tax, but each count seeks recovery of the additional tax paid.

Plaintiffs, The Cleveland Trust Company and A. Dean Perry, co-executors of the Estate of Helen Wade Greene, decedent, in support of Counts II, III, and IV, move for production of certain Government documents, identified at a deposition but not disclosed. The identified documents prepared in the office of the Cleveland District Director include the Informal Conference report, reports by the Estate Examiner in the Audit Division, reports of the Conferee, reports of conferences by or with the Chief of the Audit Division, memoranda of certain conversations, and miscellaneous internal documents. The documents sought also include one prepared for and one prepared by, the Regional Commissioner in Cincinnati, and a report of the Appellate Division.

█ A motion of the defendant Government to dismiss Counts II, III, and IV of the complaint was previously overruled. It is now contended that Counts II, III, and IV present no genuine issue as to any material fact. Absence of a materially factual question can make summary judgment timely in a tax refund action. Steiner v. Nelson, 259 F.2d 853, at 858 (7th Cir. 1958).

Count II of the complaint contends that

By reason of the failure and refusal of the Commissioner of Internal Revenue to abide by the Treasury Regulations and published procedures, the assessment and collection of such additional federal estate tax and interest, aggregating $565,980.20, is erroneous

and illegal, and the retention of said sum by the United States is wrongful.

In considering the legal sufficency of these claims of Count II, undisputed facts forming the setting for these claims will be recounted. By a so-called ten-day letter, on October 10, 1961 a Federal Estate Tax Examiner "notified the executors of certain adjustments proposed that would increase the federal estate tax payable by the estate, including, along with other adjustments, the determination that the conveyance of property to the trust on August 15, 1957, was made by the decedent in contemplation of her death."

In accordance with procedures published by the Commissioner of Internal Revenue, 26 C.F.R. § 601.105, and Rev. Proc. 60–24, 1960–2 Cum.Bull. 60–24, later to be discussed, an Informal Conference was held on November 28, 1961. The Informal Conference and relevant occurrences before and after are chronicled in the April 3, 1962 letter from the attorneys for the executors to the District Director of Internal Revenue, attention Louis H. Florian, Estate Tax Examiner. The Conference Coordinator forwarded

> a statement of the Examining Officer's proposed adjustments and suggesting that a conference might be arranged with Conferee Robert P. Pool. These proposed adjustments indicated that, in addition to some minor changes in valuation, there was a major difference resulting from the disallowance of a claim for a discount from the quoted price of several large holdings of stocks, due to blockage.

In the statement

> The question of the taxability of the transfer made by the decedent on August 15, 1957, for the benefit of her daughter, Helen Greene Perry, was also raised.

Prior to the conference with Mr. Pool

> In the course of your audit * * * there were filed an affidavit of Dr. Joseph T. Wearn, the decedent's physician and Dean of Western Reserve University Medical School for many years, an affidavit of Dr. Austin B. Chinn, who attended Mrs. Greene at the time of her death, an affidavit of Miss Julia Raymond, who was a house guest of the decedent at the time of her death, and affidavits of Helen Greene Perry, A. Dean Perry, Harold T. Clark, Janet H. Stuart, Sherman E. Lee and Donald M. DeMuth, setting forth facts showing the motive for the transfer and clearly establishing that the motive was not contemplation of death.

Referring to the Informal Conference, the letter further states

> the question of the motive for the gift was thoroughly investigated. The estate representatives presented a written statement setting forth the basis of the claim that the gifts were not made in contemplation of death. Oral arguments were made by both sides. Thorough questioning was conducted by both Mr. Pool, as Conferee, and by yourself as the Examining Officer.

It is further stated that

> Several weeks after the conference you presented to us a Form 890–B, waiving restrictions on the assessment of a deficiency of $77,781.53. This was thereafter signed by The Cleveland Trust Company as Co-Executor and delivered to you on December 26, 1961. This deficiency was based upon a determination that the gift made for the benefit of the decedent's daughter referred to above was not made in contemplation of death and allowed some discount for blockage but not as much as was claimed by the estate.

Form 890–B is an "Estate Tax Waiver of Restrictions on Assessments and Collections of Deficiency and Acceptance of Overassessment." Contemporaneous with its execution, on or about December 12, 1961, The Cleveland Trust Company and A. Dean Perry, Co-Executors, signed a collateral agreement. This agreement delivered to the defendant United States of America on December 26, 1961, states, in part, that the undersigned

> hereby agree that in the event of the acceptance by or on behalf of the Com-

missioner of Internal Revenue of a proposed settlement of the estate tax liability of the Estate of Helen Wade Greene, and as a part of the consideration for such settlement, our cost bases for income tax purposes for the following shares of stock, which were held by The Cleveland Trust Company, Helen Greene Perry, and A. Dean Perry, as Trustees under an Agreement dated September 1, 1948, as amended from time to time and restated August 15, 1957, shall be as follows: [thereafter appear the number of shares and the share value fixed for the identified stocks.]

It appears that the agreed deficiency of $77,781.53 together with interest in the amount of $8,307.71, or a total of $86,089.24, was paid by check to the Internal Revenue Service on January 3, 1962. On January 19, 1962 the sum was assessed by the Commissioner. Refund of this money has never been requested nor has the Internal Revenue Service offered to refund the money.

Referring to Form 890–B, as executed, the April 3, 1962 letter of executors' counsel states that "we all expected that there would be a final Treasury letter well in advance of March 10, 1962." However, as the letter recites, in a conference with Estate Examiner Florian on April 2, 1962

you informed us that the Internal Revenue Service had changed its position in regard to a proposed settlement of the federal estate tax liability and now asserts that a transfer made August 15, 1957 for the benefit of the decedent's daughter is taxable and that the Executors are therefore free to withdraw the Form 890–B * * *. You also informed us that a partial withdrawal of this waiver, or modification thereof, might be effected and that if desired by the estate an opportunity would be afforded for another informal conference.

■ The "proposed settlement of the federal tax liability," recognized by ex-ecutors' counsel, is evidenced by the contingent collateral agreement and by Form 890–B (Estate Tax Waiver of Restrictions). The footnote of the latter document reads:

The execution and filing of this form will expedite the adjustment of the tax liability as indicated above. It is not, however, a final closing agreement under section 7121 of the Internal Revenue Code of 1954, and does not, therefore, preclude the assertion of a deficiency * * * should it subsequently be determined that additional tax is due * * *.

Indeed Form 870–AD entitled "Offer of Waiver of Restrictions on Assessments and Collection of Deficiency in Tax and of Acceptance of Overassessment" (and similarly Form 890–B) cannot qualify as a closing agreement as authorized by 26 U.S.C. § 7121 (1964), nor as a compromise agreement as authorized by 26 U.S.C. § 7122 (1964). See Uinta Livestock Corp. v. United States, 355 F.2d 761 (10th Cir. 1966); United States v. Prince, 348 F.2d 746, at 749 (2d Cir. 1965). *Uinta*, supra, makes it clear that "at the present time Congress has specified how tax matters may be settled either by a closing agreement or by compromise."

Subsequent to the April 2, 1962 conference at which the executors were informed of the Government's rejection of the "proposed settlement," counsel for the executors, without avail, requested identification of the reasons for the rejection. By conference and correspondence these requests were directed to the Cleveland District Director's office, to the Cincinnati Regional Commissioner, and finally to the Commissioner of Internal Revenue. Typical of these efforts was counsel's letter to Commissioner Caplin on August 13, 1962:

we were granted, an audience with Regional Commissioner Vaughn in Cincinnati.

Alas, the only thing this conference produced was the statement of the

Regional Commissioner (in his letter of June 29, 1962, page 2) that:

> there are several things which lead me to believe that there is a clearly defined error in this case having a substantial effect on the tax liability.

We begged the Regional Commissioner to identify these "things." (See our letter of July 26, 1962, to the Regional Commissioner.)

No such specification has been forthcoming.

The reaction of the Internal Revenue Service is reported in the Commissioner's responding letter of October 5, 1962:

> As I understand your position, you are not raising the substantive issues in this case, but are focusing your criticisms on a procedural basis. You point out that in Rev.Proc. 60–24, it is noted:
>
>> Occasionally, in cases where an agreement is reached at an informal conference, review of the case will disclose that the conferee's decision was based on a clearly defined error having a substantial effect on the tax liability.
>
> As the procedure further points out:
>
>> * * * In such instances, if the change necessary to correct the error is adverse to the taxpayer, he will be offered another informal conference in the matter with the Conference Coordinator. * * *
>
> I also invite your attention to Regulations, Section 601.105(c) (3), on rules governing informal conferences. In the third and fourth sentences preceding the end of paragraph (3), it is pointed out that conference reports are subject to review, and that the purpose of review is to insure uniformity in the application of the Code, regulations, rulings, and general policy of the Service. That the live review function was shifted from the district office to the regional office does not change the effect and intent of the regulations.
>
> The portion of Rev.Proc. 60–24 referred to by you is a gloss on the regulations quoted above. The concept of not reversing a conferee's decision unless there is a "clearly defined error having a substantial effect on the tax liability" is intended to separate the insignificant from the significant, as well as those errors involving close questions of judgment. It is intended to permit correction of cases where errors are clearly identified—as compared to those which may be regarded as vague or uncertain. The concept is not a legal one as prevails in the standards of review in the Federal courts.
>
> I do not think it advisable for me to express any views on the correct determination to be reached in this case. Rather, this must be left to the normal administrative and, if necessary, judicial processes. But I do believe that it was reasonable for the review staff to find, in your case, there was involved "a clearly defined error having a substantial effect on the tax liability." The legal presumption in favor of the Government, as provided by Section 2035 of the Code, was not adequately considered by the conferee, particularly in the light of the evidence indicating testamentary motive.

■ The Government's authority to settle a claim of tax liability depends upon and is limited by 26 U.S.C. § 7121 (1964), entitled "Closing Agreements" or by 26 U.S.C. § 7122 (1964), entitled "Compromises." Under Section 7121

> The Secretary or his delegate is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

Section 7122 applies to litigation only. It provides that

> The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after

reference to the Department of Justice for prosecution or defense.

These two sections, like the earlier Section 3229 of the Revised Statutes, 47 Stat. 1518, "prescribe the exclusive method by which tax cases could be compromised." Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1928). Followed in Joyce v. Gentsch, 141 F.2d 891, at 895 (6th Cir. 1944).

The plaintiffs do not claim that either the "Secretary or his delegate" expressly approved the Informal Conference Agreement. On the contrary, the Commissioner of Internal Revenue, deemed to be a delegate of the Secretary, affirmed the rejection of the proposed informal conference agreement, as is revealed in the Commissioner's letter. Plaintiffs appear to argue that subject to the Government's right on review to revoke the informal conference agreement upon a finding of "clearly defined error," Treasury regulations and procedures have delegated to the Conferee at the Informal Conference, the Secretary's authority to bind the Government to an informal conference agreement.

Thus plaintiffs urge:

The Government is bound by the Informal Conference settlement because the Government has not made, or notified the taxpayer of, any finding of "clearly defined error" for which alone the Government reserved the right to revoke the Informal Conference agreement.

In developing their argument, plaintiffs make the following comment on Rev.Proc. 60–24(5) (.04), supra, promulgated by the Commissioner (in 1960 the term "clearly defined error" first appears in the revenue procedures):

The Commissioner has not said that an agreement reached at Informal Conference will be reopened:

for error,

nor has the Commissioner said that such agreement will be revoked if the reviewer:

comes to a different conclusion on the weight of the evidence.

The standard to be applied, according to the Commissioner's commitment to taxpayers, is the standard of:

clearly defined error.

Before looking at Rev.Proc. 60–24(5) (.04) on which plaintiffs' argument relies, it is essential to study the Rules Governing Informal Conferences, 26 C.F.R. § 601.105(c) (3), into which Rev. Proc. 60–24(5) (.04) was incorporated (28 Fed.Reg. 2944, March 26, 1963). These Rules instruct the Conference Coordinator or Conferee

to provide the taxpayer a fair and courteous hearing at which time taxpayer may present his statement of facts and his view of the issues; to make certain that all pertinent facts are included in the record and are considered in arriving at the proposed recommendation and that the proposed recommendation is in accord with the interpretations of the Internal Revenue Service as expressed in regulations and rulings * * *.

■ Executors' counsel's letter indicates that the Informal Conference held by the examining officer and the Conferee was "a fair and courteous hearing," which conformed to these Rules.

Estate representatives presented a written statement setting forth the basis of the claim that the gifts were not made in contemplation of death. Oral arguments were made by both sides. Thorough questioning was conducted by both * * * Conferee and * * * Examining Officer.

Neither as held, nor as intended, is the Informal Conference an adversary proceeding to which witnesses may be subpoenaed, or at which witnesses are placed under oath, or subjected to examination and cross-examination. As anticipated by the procedure Rules, the Conferee functions as an interrogator and negotiator, not as an adjudicator. The Informal Conference reached a proposed settlement concerning the claim that the gifts were not made in contemplation of death. Yet this question could not be and was not adjudicated.

Rev.Proc. 60–24(5) (.04), 1960–2 Cum. Bull. 60–24(5) (.04) contains the following language upon which plaintiffs build their position:

Occasionally in cases where an agreement is reached at an informal conference, review of the case will disclose that the conferee's decision was based on a clearly defined error having a substantial effect on the tax liability.

The words "review of the case", "conferee's decision", "based on a clearly defined error" are suggestive of judicial review. Use of this terminology lends plausibility to counsel's argument that "the Government reserved the right to revoke the informal conference agreement only upon a finding of 'clearly defined error.'" Since Rev.Proc. 60–24(5) (.04), is incorporated into the Rules Governing Informal Conferences, it must be interpreted within the context of the Rules. As seen, the informal conference agreement is a "proposed recommendation." The Informal Conference agreement is not an adjudicated decision, and is therefore not judicially reviewable. Rev.Proc. 60–24(5) (.04), itself, recognizes that "review of the case" does not contemplate a judicial review. The only recourse provided "if the change necessary to correct the error is adverse to the taxpayer" is to offer the taxpayer "another informal conference." Thus the departmental "review of the case" serves as a part of, and a check upon, the operation of the informal conference procedure.

The Rules instruct the Conferee "to explain fully to the taxpayer the conclusion reached and the reasons therefor." Significantly, there is no similar provision upon review. "If the change necessary to correct the error is adverse to the taxpayer," Rev.Proc. 60–24(5) (.04) does not direct the reviewing officer to explain to the taxpayer the conclusion reached or the reasons therefor.

All arguments considered, it must be and is found and determined that Rev. Proc. 60–24(5) (.04), construed as a part of the Rules Governing Informal Conferences, does not delegate to the Informal Conference Conferee the authority vested in "the Secretary or his delegate" to bind the Government to a settlement of a tax liability. Moreover, it is not possible to imply a delegation of the Secretary's power to enter a closing or compromise agreement. "The United States cannot be bound * * * in the absence of statutory authority to enter into the contract which is sought to be implied by operation of law. [Citing cases]" United States v. Saladoff, 233 F.Supp. 255, at 258 (E.D.Pa.1964).

The Internal Revenue Service, by its revenue procedure, is not required to identify to the taxpayer the error upon which an Informal Conference agreement is rejected. Nevertheless such disclosure by the district or regional office would certainly foster needed understanding and confidence between the taxpayer and the tax-gatherer. By this means a further informal conference would be encouraged and resolution of the dispute without litigation might result. The understandable exasperation of the taxpayer and its counsel in repeatedly being rebuffed as they sought identification of the claimed "clearly defined error" is a perfect case in point.

Certainly it stopped short of clarifying the "clearly defined error" for the Cleveland office to say, later substantially repeated by the Commissioner in his letter,

The "clearly defined error" in this case is the failure to give proper application to the legal presumption in favor of the Government, as provided by Section 2035 of the Internal Revenue Code, in view of the evidence indicating testamentary motives.

Plaintiffs also contend that since the Commissioner has failed "to abide by the Treasury regulations and published procedures, the assessment and collection is erroneous and illegal."

The Introduction to the Internal Revenue Bulletin specifies that "Revenue Rulings and Revenue Procedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations (including Treasury decisions), but

are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose." Hence, Rev.Proc. 60–24(5) (.04), 1960–2 Cum.Bull. 60–24, upon which plaintiffs rely, has neither the force nor effect of a Treasury Department regulation, nor of law.

■ Rev.Proc. 60–24(5) (.04) was incorporated into the Code of Federal Regulations, 26 C.F.R. § 601.101, Statement of Procedural Rules on March 26, 1963, as an amendment to 26 C.F.R. § 601.105(c) (3), Rules Governing Informal Conferences (28 Fed.Reg. 2944 (1963)), and was repealed, 31 Fed.Reg. 2818, Feb. 16, 1966. Publication of Rev. Proc. 60–24(5) (.04) as a regulation on March 26, 1963 should not retroactively affect the instant Informal Conference agreement of November 28, 1961 nor the review of this matter during 1962.

■ Furthermore, the Statement of Procedural Rules are promulgated under Revised Stat. 161; Title 5 U.S.C. § 22 (1964) (see Authority at page 4, 26 C.F. R. § 601.101). This enabling statute requires that regulations prescribed by the head of the department be "not inconsistent with law." Title 26 C.F.R. § 601.105(c) (3) does not expressly delegate, and it cannot impliedly delegate, to the Informal Conference Conferee the authority to bind the Government to a settlement of a tax liability. To imply such a delegation of power would contravene Internal Revenue Code of 1954, §§ 7121, 7122, 26 U.S.C. §§ 7121 and 7122 (1964), which vest only in "the Secretary or his delegate" the power to enter a closing or compromise tax liability agreement.

■ In result, this court's conclusions concur with the determination of Luhring v. Glotzbach, 304 F.2d 560, at 564 (4th Cir. 1962), that the Statement of Procedural Rules do not have the effect of law and are directory in character.

Reineman v. United States, 301 F.2d 267 (7th Cir. 1962), relied upon by plaintiffs, is explained and distinguished in Geurkink v. United States, 354 F.2d 629 (7th Cir. 1966). In appearing to approve Luhring's characterization of the procedural rules as directory, Geurkink significantly quotes from Luhring, and concludes "We do not understand that we have held to the contrary." Id. at 632.

■ For the foregoing reasons it is found and determined that Count II presents no genuine issue of material fact and does not constitute a legally sufficient ground of recovery.

■ Count III, adopting many of the paragraphs of Count II, asserts that the additional tax and interest, "was determined, assessed and collected from plaintiffs in violation of the Administrative Procedure Act, 5 U.S.C. Section 1001 et seq., and is void. * * *" The conclusion reached with reference to Count II requires the further determination that neither the Informal Conference nor the review of the Informal Conference agreement is subject to the provisions of the Administrative Procedure Act. In addition, it is specifically found and determined that 5 U.S.C. § 1004, par. 1 (1964), which excepts matters subject to trials de novo from the adjudication procedure set forth in that section, exempts and excludes the Informal Conference procedures from the operation and effect of the Administrative Procedure Act. Hence, neither the Commisioner nor his subordinates who reviewed the Informal Conference agreement was required by 5 U.S.C. § 1005(d) (1964), in rejecting the "proposed recommendation," to accompany their action with a simple statement of procedural or other grounds.

Count III presents no genuine issue of material fact and no legally sufficient ground of recovery.

Count IV asserts that

the United States has retained the benefit of the agreement made at the Informal Conference and is estopped to repudiate that agreement or to claim that the sums paid by the executors pursuant to the agreement reached at the Informal Conference did not fully and completely discharge all of the balance of any federal estate tax and

interest thereon rightly due from the estate of the decedent.

■ Upon the reasoning already expressed, and upon the authority of Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1916), it is generally determined that the United States cannot be estopped to repudiate the Informal Conference agreement. *Utah Power,* in part holds,

> The United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit. Id. at 390 (syl.), 37 S.Ct. 387.

The estoppel count will be studied in more particularity.

■ In claiming that the United States has retained the benefit of the Informal Conference agreement the plaintiffs refer in part to the collateral agreement which was executed by the executors contemporaneously with Form 890–B. The collateral agreement is by its express terms dependent upon a contingency. The agreement of the executors was that

> in the event of the acceptance by or on behalf of the Commisioner of Internal Revenue of a proposed settlement of the estate tax liability of the Estate of Helen Wade Greene. * * *

The proposed settlement was not accepted, and did not become binding under 26 U.S.C. § 7121 or § 7122 (1964). With the collateral agreement ineffective, the "cost bases for income tax purposes" of the shares of stock identified in the collateral agreement never became obligatory. The executors are free to ignore the collateral agreement's proposed "cost bases for income tax purposes."

The record indicates that none of the Form 890–B agreed tax deficiency of $77,781.53 plus interest of $8,307.71 was assessed upon the basis that Helen Wade Greene on August 15, 1957 transferred her property to the newly created trust in contemplation of death. On the contrary, as executors' counsel stated in their letter of April 3, 1962

> this deficiency was based upon a determination that the gift made for the benefit of the decedent's daughter referred to above was not made in contemplation of death * * *.

Hence it is concluded that any claim of estoppel, in any event, should be limited to the Form 890–B aggregate deficiency of $86,089.24. The payment of that sum on January 3, 1962, none of which is attributable to the additional tax later assessed, may not be asserted as proof of the claim of estoppel now made to support recovery of the additional tax payment.

Should the plaintiffs hereafter seek recovery of the $86,089.24, at that time consideration can be given to the effect upon any claim of estoppel because of the taxpayer's payment of $86,089.24 on January 3, 1962 prior to the Government's assessment of this amount on January 19, 1962. Consideration can also then be given to the question of whether a claim of estoppel, if established, can be raised by the taxpayer against any attempt by the Government to assert, defensively, any applicable period of limitation. Count IV, measured against the material facts on which there is no genuine issue, is not legally sufficient.

■ The Government's motion for summary judgment is granted as to Counts II, III, and IV. As to plaintiffs' motion for production of documents, whatever those documents may disclose can have no bearing on the legal sufficiency of Counts II, III, or IV. The determinations heretofore reached render immaterial and moot both the adequacy and the accuracy of whatever reasons motivated rejection, on review, of the "proposed recommendation" accomplished at the Informal Conference. Accordingly, plaintiffs' motion is denied.