784 F.Supp. 1426 (1992)
Charles HEFTI and Marion Hefti, Plaintiffs,
v.
Kevin McGRATH, et al., Defendants.
No. 88-1013C(6).
United States District Court, E.D. Missouri, E.D.
February 6, 1992.
As Amended on Grant of Reconsideration March 31, 1992.
*1427 *1428 Charles and Marion Hefti, Charles Shaw, St. Louis, Mo., for plaintiffs.
Robert Millstone, Trial Atty., Office of Sp. Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment with respect to plaintiffs' third amended complaint and plaintiffs' opposition thereto. The parties have incorporated by reference the arguments set forth in their motions to dismiss or, in the alternative, for summary judgment with respect to plaintiffs' second amended and first amended complaints and the responses and replies thereto. The Court has therefore considered the arguments presented in those pleadings in resolving the present motion. Many arguments raised by the parties are purely legal and have been treated here under the rubric applicable to motions to dismiss for failure to state a claim. Under this analysis, the dismissal of a claim is proper if, taking all well-pleaded facts as true and construing them in the light most favorable to the plaintiffs, it is clear that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Cite
In certain instances, which will be noted below, the Court has found it necessary to consider matters outside the pleadings which have been presented to it by way of affidavit or exhibit. Where such matters have been considered by the Court, the Court will treat defendants' motion as a motion for summary judgment.
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); First Security Savings v. Kansas Bankers Surety Co., 849 F.2d 345, 349 (8th Cir. 1988); Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). In passing on a motion for summary judgment, a court is required to view the facts and inferences that reasonably may be derived therefrom in the light most favorable to the non-moving party. Holloway v. Lockhart, 813 F.2d 874, 876 (8th Cir.1987); Economy Housing Co. v. Continental Forest Products, Inc., 757 F.2d 200, 203 (8th Cir.1985). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir.1986). As the Supreme Court has stated:
The inquiry performed is the threshold inquiry of determining whether there is the need for a trial  whether, in other words, there are any genuine factual issues *1429 that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
This is a Bivens (Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 392-97, 91 S.Ct. 1999, 2002-05, 29 L.Ed.2d 619 (1970)) action filed by taxpayers Charles M. and Marion Hefti (the Heftis) against various revenue agents, IRS appeals officers and IRS attorneys. On December 20, 1991 the Court granted plaintiffs leave to file a third amended complaint restating their Bivens claim and adding civil rights conspiracy and RICO claims. In their third amended complaint plaintiffs allege that Revenue Agent Kevin McGrath searched their home on or about August 15, 1983 during the course of an IRS audit of plaintiffs' business for the tax years 1980-1982. See Third Amended Complaint at ¶ 7. They further allege that McGrath and his supervisor, James Jewik, conducted a second inspection of their residence on or about December 1, 1983. Id. at 8. Plaintiffs allege that the purported reason for these inspections was to gather information needed for the audit process. Plaintiffs contend that the inspections were unnecessary because the IRS had conducted previous searches of their home and had previously obtained the information sought in these inspections. Id.
In paragraph 9 of their third amended complaint, plaintiffs also allege that IRS Appeals Officer Thomas Wettig represented to them during the course of a February 14, 1985 meeting that their pursuit of the IRS appeals process would be fruitless. Plaintiffs base this contention on the following statement by Wettig: "No matter what we talk about or what you bring in, or what you show me, or anything else, is going to make any more difference than one to three thousand dollars, if it makes that much difference at all." Id. at ¶ 9. Plaintiffs further allege that Wettig refused to allow plaintiffs to taperecord a meeting at the IRS offices on or about February 21, 1985. Id. at ¶ 10. Plaintiffs also allege that IRS attorney James Kutten made the following statement to them: "[I]t is your right to have the office wherever you want to have it. It is something to consider to avoid the problem. As long as you have an office in the home, you are going to have that problem. It is not going to go away." Id. at ¶ 11. In paragraph 12 of the third amended complaint, plaintiffs charge that Chief Appeals Officer Frank Brafman refused to allow plaintiffs to have a witness present during a meeting at the IRS Appeals office on February 22, 1985. In addition, they allege that they were required to contact the IRS several times before they were able to arrange the aforementioned meeting which was attended by Associate Chief of Appeals Edward Besekrus and Appeals Officer Wettig. Id. at ¶ 12. Plaintiffs characterize their meetings with IRS appeals officers as "sham attempts to satisfy administrative requirements" and "occasions for defendants to subject plaintiffs to scare tactics and verbal abuse." Id.
Plaintiffs also challenge the scope of a May 16, 1985 search of their home by IRS attorney James Kutten and agent Thomas Wettig. Id. at ¶ 13. They contend that this inspection exceeded the directive of the tax court limiting the inspection solely to business areas within their home. They further assert that IRS personnel took photographs of their residence during this inspection and that they have been unable to recover these photographs from the IRS. Id. In paragraph 14 plaintiffs allege that Kutten and unidentified "accomplices" moved furniture and took photographs of business areas to make them appear as though they were residential areas of the home. Plaintiffs also charge that at some time between August 1983 and February 1986 portions of their financial and tax records were destroyed or lost by unspecified persons conducting an inspection of their records "under the guidance of Kevin McGrath." Id. at ¶ 15. Plaintiffs also allege that unidentified IRS agents harassed them at their home on February 12, 1986, the eve of their trial in the Tax Court. Id. at ¶ 16. Finally, plaintiffs allege that Kutten falsely stipulated before the Tax Court *1430 that the IRS had furnished the Tax Court with "true and correct photocopies" of plaintiffs' records. Id. at ¶ 17. On the basis of the foregoing factual allegations, plaintiffs allege violations of their rights under the fourth, fifth and fourteenth amendments and seek monetary damages.
In addition, the third amended complaint alleges a conspiracy among and between the defendants to interfere with plaintiffs' right to equal protection of the laws and a RICO claim based upon the allegations set out in paragraphs 14, 15 and 17 of the third amended complaint.

Sovereign Immunity
In their motions to dismiss, or in the alternative, for summary judgment defendants initially raise the defense of sovereign immunity. Specifically, they contend that insofar as plaintiffs have alleged that defendants are sued in their official capacities the claims against them are in fact claims against the United States which are barred by the doctrine of sovereign immunity. Sovereign immunity bars the assertion of a suit against the United States absent a specific waiver of such immunity. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). The application of this doctrine cannot be avoided by naming individual employees or officers of the federal government as defendants. See Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). Plaintiffs contend that sovereign immunity does not apply because they have asserted Bivens claims against the defendants in their individual capacities. Upon review of these arguments the Court concludes that plaintiffs' claims against defendants in their official capacities are barred by the doctrine of sovereign immunity, but that plaintiffs' claims against defendants in their individual capacities should stand in the face of such immunity. See id.
Claims for money damages against federal officials, acting under color of title, for violations of plaintiffs' constitutional rights have long been recognized. See, e.g., Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 392-97, 91 S.Ct. 1999, 2002-05, 29 L.Ed.2d 619 (1970). In Butz v. Economou, the Supreme Court noted that "the cause of action recognized in Bivens would ... be `drained of meaning' if federal officials were entitled to absolute immunity for their constitutional transgressions." Butz v. Economou, 438 U.S. 478, 501, 98 S.Ct. 2894, 2908, 57 L.Ed.2d 895 (1978). The Supreme Court therefore held that qualified immunity from damages, rather than absolute immunity premised upon sovereign immunity, should be the general rule when federal officials are charged with constitutional violations. Id. at 508, 98 S.Ct. at 2916.
In this suit plaintiffs have alleged that all defendants are sued in their official and individual capacities. They have also alleged that the actions performed by defendants violated their constitutional rights and that these actions were performed under color of title. For the purposes of the Bivens claims alleged by plaintiffs, the Court finds these allegations sufficient to overcome defendants' blanket assertion of sovereign immunity. Nevertheless the Court finds that certain of the defendants, namely IRS attorney James Kutten, are entitled to absolute immunity from liability for money damages on the basis of the principles announced in Butz v. Economou and its progeny.
In Butz the Supreme Court held that an "agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." Id. at 517, 98 S.Ct. at 2916. Of more recent vintage, the Ninth Circuit has specifically held that an IRS attorney is absolutely immune from liability in damages for claims arising from all conduct "intimately associated with the judicial phases" of tax litigation. See Fry v. Melargno, 939 F.2d 832, 837-38 (9th Cir.1991) (quoting Burns v. Reed, ___ U.S. ___, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)). Each of these holdings is sufficiently broad to immunize Mr. Kutten from liability for the allegations contained in *1431 Paragraph 17 of plaintiffs' third amended complaint.

The Fourteenth Amendment Claims
Defendants contend that plaintiffs may not successfully assert a Bivens claim under the fourteenth amendment because that amendment by its terms relates to the actions of state rather than federal entities. It is beyond dispute that the fourteenth amendment has no application in a case such as this where the constitutional violations are alleged to have been committed by federal officers. See United States v. Carter, 409 U.S. 418, 424, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973); United States v. McClinton, 815 F.2d 1242, 1244 & n. 3 (8th Cir.1987). Therefore, plaintiffs' claims under the fourteenth amendment will be dismissed.

The Fifth Amendment Claims
Defendants also assert that there is no Bivens-type claim available for alleged violations of the fifth amendment due process clause in the context of an IRS administrative appeal proceeding. Plaintiffs do not dispute this assertion, contending instead that their Bivens claim is also based upon alleged violations of the fourth amendment.
Upon review of the allegations contained in paragraphs 9 through 12 of the third amended complaint, the Court concludes that these assertions implicate fifth amendment due process clause concerns. In essence plaintiffs challenge the efficacy and impartiality of the IRS appeals process in their case.
The Court agrees with defendants' assertions that a taxpayer may not bring a Bivens claim for alleged violations of the fifth amendment due process clause during the course of an IRS administrative appeal proceeding. See National Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1248 (10th Cir.1989); Cameron v. Commissioner, 773 F.2d 126, 129 (7th Cir.1985); Rosenberg v. Commissioner, 450 F.2d 529, 530-31 (10th Cir.1971); Luhring v. Glotzbach, 304 F.2d 560, 563-65 (4th Cir.1962). A comprehensive framework of administrative and judicial remedies is available to persons who seek to challenge their tax liability. Plaintiffs have availed themselves of many of these remedies. They have filed numerous petitions to quash IRS summonses, pursued an unsuccessful challenge to their tax assessments in the United States Tax Court and filed a refund action to set aside those assessments. Plaintiffs are entitled to vigorously pursue all of the aforementioned remedies, but in the event that they fail to obtain the relief they seek, they are not entitled to bypass the carefully crafted scheme of remedies by bringing a damage action directed against the defendants as individuals. See Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 2466-70, 101 L.Ed.2d 370 (1988) (refusing to recognize a Bivens remedy for alleged due process violations in the denial of social security disability benefits in light of the existence of a comprehensive remedial scheme for review and adjudication of disputed claims). On the basis of the foregoing the Court concludes that plaintiffs' claim under the fifth should be dismissed.

The Fourth Amendment Bivens Claims
Upon review of plaintiffs' allegations concerning the August 15, 1983 and December 1, 1983 inspections of their residence, the Court concludes that plaintiffs have failed to state a claim for the violation of the fourth amendment. Nothing in plaintiffs' allegations indicates that these inspections were other than consensual. Plaintiffs merely allege that the inspections were unnecessary because they were repeated at certain intervals and that defendants had already acquired knowledge of plaintiffs' residence through prior inspections. Moreover, the Internal Revenue Code provides explicit authority for the actions of defendants McGrath, Wettig, Jewik and Kutten to inspect plaintiffs' home in light of their assertion that the business which they operated from their home occupied 89 percent of their residence. See 26 U.S.C. §§ 7601(a) and 7602(a). In light of the consensual nature of the inspections and the explicit statutory authority for their conduct, the Court concludes that they do not constitute unreasonable *1432 searches within the meaning of the fourth amendment.
Assuming for the sake of argument that the allegedly repetitive nature of the inspections is sufficient to state a claim for the violation of the fourth amendment, the Court further concludes that McGrath and Jewitt would be entitled to qualified immunity for their role in the inspections. There is no indication that defendants had personal knowledge of the prior inspections or would have reasonably believed that the performance of multiple inspections violated a "clearly established" constitutional right even if they had possessed such knowledge. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985); Christensen v. McGovern, 916 F.2d 1462, 1475 (10th Cir. 1990).
The allegations set forth in paragraphs 13 and 14 of the third amended complaint concern the conduct of a May 16, 1985 inspection of plaintiffs' residence by James Kutten and Thomas Wettig. These allegations were addressed and rejected by the Tax Court in a November 23, 1987 Memorandum sur order issued during the pendency of that litigation.[1] On the basis of the Tax Court's determination, the Court concludes that the allegations set forth in paragraphs 13 and 14 do not state a claim for the violation of a constitutional right. Moreover, the Court finds that plaintiffs are collaterally estopped from relitigating these issues because they were fully presented to the Tax Court.
Assuming that the allegations of paragraphs 13 & 14 are sufficient to state a claim, the Court concludes that defendants Kutten and Wettig would be entitled to qualified immunity from liability for their actions. The grant of such immunity would be proper because there is no indication that defendants knew or reasonably should have known that their actions, taken pursuant to an order of the Tax Court, violated a clearly established statutory or constitutional right. Anderson v. Creighton, 483 U.S. at 639, 107 S.Ct. at 3038; Mitchell v. Forsyth, 472 U.S. at 528, 105 S.Ct. at 2816 (officials are immune unless "the law clearly proscribed the actions" they took).
In paragraph 15 of the third amended complaint, plaintiffs allege that certain of their financial records were negligently, recklessly or maliciously torn, burned or lost during the course of an inspection conducted "under the guidance" of Agent Kevin McGrath. The Court concludes that this allegation fails to state a claim against McGrath because there is no respondeat superior liability in a Bivens-type action. See Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir.1987); Laswell v. Brown, 683 F.2d 261, 267-68 & n. 11 (8th Cir.1982).
Finally, the allegations contained in paragraph 16 concerning the harassment of the Heftis by unidentified individuals fail to state a claim for relief against the named defendants. See Tallman v. Reagan, 846 F.2d 494, 495 (8th Cir.1988) (only federal officials who actually participated in alleged violations are subject to Bivens-type suit). The Court is mindful of the fact that unidentified federal officers may be named as defendants in Bivens actions. Nevertheless, the Court concludes that the allegations set forth in paragraph 16 are too vague to meet the heightened pleading standard applicable to such actions.

*1433 Civil Rights Conspiracy

In Count Two of their complaint, plaintiffs allege, on the basis of the factual allegations summarized above, that all defendants conspired to deprive plaintiffs of equal protection of the laws and equal privileges and immunities under the Constitution and laws of Missouri and the United States. Plaintiffs have not identified a statutory or common law basis for this count, but inasmuch as the allegations loosely track the language of 42 U.S.C. § 1985(3), the Court will construe this count as a claim for damages under that provision. See 42 U.S.C. § 1985(3). "It is well settled that some class-based animus must be alleged to state a claim under § 1985(3)." Massey v. Smith, 555 F.2d 1355, 1356 (8th Cir.1977) (citing Griffin v. Breckenridge, 403 U.S. 88, 101-02, 91 S.Ct. 1790, 1797-98, 29 L.Ed.2d 338 (1971); McNally v. Pulitzer Publishing Co., 532 F.2d 69, 74-75 (8th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976)). Plaintiffs make no such allegations nor does it appear that their complaint presents a basis for the assertion of such allegations. Accordingly, the Court concludes that plaintiffs' civil rights conspiracy claim should be dismissed for failure to state a claim upon which relief can be granted.

RICO Claim
In Count Three of their third amended complaint, plaintiffs attempt to allege against defendants Kutten, Wettig, McGrath and their "accomplices" a claim under RICO, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (1988). The RICO claim is based upon the factual allegations set forth in paragraphs 14, 15 and 17 of the third amended complaint.
The allegations of plaintiffs' RICO claim do not track the statutory elements or make reference to specific statutory provisions. This fact alone is sufficient to support the dismissal of the claim. See National Commodity & Barter Ass'n v. Gibbs, 886 F.2d at 1249. Nevertheless, the Court has attempted to discern the basis of plaintiffs' RICO claim from the sparse allegations of the complaint. Plaintiffs apparently allege that the IRS is an "enterprise" engaged in interstate or foreign commerce and that defendants were employed by the IRS and participated in the conduct of its affairs through a pattern of racketeering activity. See Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint at 4. The Court will therefore construe plaintiffs' claim as one for the violation of 18 U.S.C. § 1962(c) which makes it "unlawful for any person ... associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to ... participate, directly or indirectly, in ... such enterprise's affairs through a pattern of racketeering activity...."
Plaintiffs' allegation of a "pattern of racketeering activity" is premised on their contention that defendants Kutten, Wettig and McGrath falsified documents in order to justify the IRS' assertions that more than ninety percent of plaintiffs' claimed tax deductions were false. In essence, they allege that defendants enabled the IRS to extort money from plaintiffs by falsifying documents. In addition, they allege that defendants conspired to falsify documents thereby "hindering, obstructing and defeating the course and administration of justice." Third Amended Complaint at ¶ 29.
Having reviewed plaintiffs' claim, the Court finds it defective in a number of respects. First, plaintiffs have failed to provide authority for the proposition that a RICO claim may lie against a group of federal officials on account of their alleged official misconduct. See Berger v. Pierce, 933 F.2d 393, 397 (6th Cir.1991); National Commodity & Barter Ass'n, 886 F.2d at 1249; Wiley v. Federal Land Bank of Louisville, 657 F.Supp. 964, 965 (S.D.Ind. 1987) (holding that Federal Land Bank and individual loan officers are immune from liability under RICO as federal instrumentalities). In addition, the Court concludes that plaintiffs' allegations of "racketeering activity" are insufficient. A "pattern of racketeering activity" is defined as at least *1434 two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years...." 18 U.S.C. § 1961(5) (1982). Pursuant to § 1961(1)(A) "racketeering activity" includes "any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year...." Section 1961(1)(B) further defines "racketeering activity" as an act which is indictable under any of certain enumerated provisions of Title 18 of the United States Code, including § 1503 which relates to obstruction of justice. Section 1961(1) also requires that the defendants be "chargeable," "indictable" or "punishable" for violations of the state and federal statutes enumerated.
The United States Tax Court has upheld with minimal adjustments the tax assessments imposed against the Heftis and has determined that there was no falsification of the documents presented to the Tax Court. See Charles R. Hefti, et al. v. Commissioner of Internal Revenue, Docket No. 21306-84, 54 T.C.M. 1555, T.C. Memo. 1988-22 (1988). The Court concludes that plaintiffs' allegations of racketeering activity based upon the offenses of extortion and obstruction of justice are therefore insufficient. There is no basis upon which the defendants could be "chargeable," "indictable" or "punishable" under state or federal law for actions which have been approved specifically by the Tax Court. In addition, the moneys which defendants are charged with "extorting" from plaintiffs were federal income tax deficiencies and penalties which were ultimately remitted to the IRS and not to the individual defendants. Therefore, the Court fails to perceive how these defendants could be "chargeable," "indictable" or "punishable" within the meaning of RICO for the collection of legally imposed federal income tax deficiencies and penalties. Moreover, the Court concludes that plaintiffs are estopped from alleging any incident of misconduct, let alone criminal misconduct, in light of the findings of the Tax Court that no misconduct of any sort occurred. See Lovelace v. Whitney, 684 F.Supp. 1438, 1443 (N.D.Ill.1988), aff'd without opinion sub nom., Lovelace v. Hall, 886 F.2d 332 (7th Cir.1989).
On the basis of the foregoing, the Court concludes that plaintiffs' RICO claim should be dismissed.

ORDER
Pursuant to the memorandum filed on this date herein,
IT IS HEREBY ORDERED that defendants' motion to dismiss, or in the alternative for summary judgment, with respect to plaintiffs' third amended complaint shall be and it is granted.
Accordingly, IT IS FURTHER ORDERED that plaintiffs' third amended complaint shall be and it is dismissed with prejudice.
IT IS FURTHER ORDERED that defendants' motion for sanctions shall be and it is denied.

ORDER
Upon consideration of defendants' motion for reconsideration, IT IS HEREBY ORDERED that defendants' motion shall be and it is granted. Accordingly, IT IS FURTHER ORDERED that the Court's Order and Memorandum of February 6, 1992 shall be and it is amended to delete footnote 1 [Editor's Note  Footnote 1 has been deleted, and remaining footnote renumbered, for publication of the opinion].
NOTES
[1] The Tax Court order provided in pertinent part: "Approximately 9 months prior to trial, respondent motioned this Court seeking access to petitioners' residence for purposes of measuring and observing the premises. One of the major issues in this case involves the amount of business use of petitioners' residence.... We permitted respondent access to petitioners' residence for measuring, photographing and inspection. Petitioners consider the resultant entry upon their residence to be an illegal "search and seizure," the fruits of which should not be admissible under the "exclusionary rule." Our review of petitioners' allegations of "illegality" in connection with respondent's entry upon their premises in this motion and in other documents filed does not reveal circumstances which would support an allegation of a Fourth or Fifth Amendment violation of petitioners' rights or a reason to invoke the exclusionary rule."