CHARLES R. HEFTI AND MARION HEFTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHARLES R. HEFTI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hefti v. Commissioner
Docket Nos. 23701-90, 23702-90
United States Tax Court
T.C. Memo 1993-128; 1993 Tax Ct. Memo LEXIS 133; 65 T.C.M. (CCH) 2241; March 31, 1993, Filed; As Amended May 26, 1993 *133 Charles R. Hefti and Marion Hefti, pro se. For respondent: Darrell C. Weaver. GERBER
GERBER
MEMORANDUM OPINION GERBER, Judge: Respondent determined income tax deficiencies for Charles R. Hefti and Marion Hefti for their 1986 and 1988 taxable years and for Charles R. Hefti for his 1987 tax year, [1] as follows: Charles R. Hefti and Marion Hefti
Additions to Tax
Sec.
Sec.
Sec.
Year
Income Tax
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1986
$ 6,437
$ 322
[1]
$ 1,609
1988
10,009
500
--
2,502
Charles R. Hefti
Additions to Tax
Sec.
Sec.
Sec.
Year
Income Tax
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
1987
$ 6,457
$ 323
[1]
$ 1,614
*134 The issues presented for our consideration are: (1) Whether petitioners are entitled to various deductions in excess of the amounts allowed by respondent; (2) whether petitioners are entitled to claim a percentage use of their residence as a home office in an amount greater than allowed by respondent; (3) whether petitioners are entitled to deductions for legal expenses in excess of those allowed by respondent and whether certain of the legal expenses are deductible as business (Schedule C) or Schedule A deductions; (4) whether petitioner husband, who filed separately for 1987, is entitled to claim his wife as a dependent; (5) whether petitioners have shown they are entitled to investment tax credit carryovers from earlier years; and (6) whether petitioners are liable for additions to tax under sections 6653(a)(1)(A) [2] and (B), 6653 (a)(1), and 6661(a). *135 General Background Facts
[3]
The parties entered into stipulations of facts with exhibits, all of which are incorporated by this reference. Petitioners' legal residence was located at Rural Route 3, Box 120, Carlinville, Illinois, from the period beginning with the last quarter of 1988 and continuing through the time of the filing of their petitions in these cases. During 1986, 1987, and the first three quarters of 1988, petitioners resided at 4 Rolling Rock Lane, Ladue, Missouri. During 1986, 1987, and the first three quarters of 1988, petitioner husband operated a business at the Rolling Rock Lane residence involving advertising and various aspects of audio-video production, consulting, and installation of related equipment. Beginning with the fourth quarter of 1988, petitioner husband operated the *136 business outside of petitioners' residence. Petitioners have been involved in protracted litigation with respondent and some of respondent's employees beginning with the examination of their 1980, 1981, and 1982 taxable years. Petitioners have been audited at least three times by respondent regarding the same or similar issues as are presented in these cases. Petitioners have petitioned this Court on three occasions to controvert respondent's determinations. Additionally, petitioners have been involved in other Federal courts in summons enforcement, contempt proceedings, and other proceedings with respect to respondent's agents. The result of some of that litigation is reported in the following opinions: 1. Hefti v. Commissioner, T.C. Memo. 1988-22, affd. without published opinion 894 F.2d 1340 (8th Cir. 1989), cert. denied 495 U.S. 933 (1990) (redetermination of petitioners' 1980-1982 tax liabilities); 2. United States v. Hefti, 688 F. Supp. 1367 (E.D. Mo. 1988), affd. 879 F.2d 311 (8th Cir. 1989), cert. denied 493 U.S. 1076 (1990) *137 (summons enforcement concerning petitioners' 1983 and 1984 tax liabilities, and the appeal also concerns an unpublished order for summons enforcement concerning petitioners' 1985 tax liability); 3. Hefti v. Commissioner, 899 F.2d 709 (8th Cir. 1990) (appeal of unpublished order of dismissal by this Court for failure to comply with Court's rules in case involving petitioners' 1983 tax liability); 4. Hefti v. Commissioner, 97 T.C. 180 (1991), affd. 983 F.2d 868 (8th Cir. 1993) (on remand from Court of Appeals for the Eighth Circuit, this Court decided that the period for assessment was open at the time respondent mailed petitioners a notice of deficiency for their 1983 tax year); 5. Hefti v. Internal Revenue Service, No. 90-3223, 1991 U.S. Dist. LEXIS 10213 (C.D. Ill., June 17, 1991) (Freedom of Information Act request, 5 U.S.C. sec. 552, concerning various assessment and computer records that petitioners sought from respondent); 6. Hefti v. McGrath, 784 F. Supp. 1426 (E.D. Mo. 1992), affd. 982 F.2d 525 (8th Cir. 1993) *138 (petitioners sued respondent's agents and attorneys concerning the inspection of their home; case dismissed with prejudice on granting of respondent's motion for summary judgment); 7. Hefti v. Commissioner, 92-1 USTC par. 50,192 (C.D. Ill. 1992), on appeal (7th Cir., Nov. 5, 1992) (petitioners sought a refund or overpayment of their 1984 and 1985 income taxes and case was dismissed); 8. Hefti v. Knapp, No. 91-3293, 1992 U.S. Dist. LEXIS 12618 (C.D. Ill., Aug. 11, 1992), on appeal (7th Cir., Nov. 25, 1992) (suit alleging violation of constitutional rights due to failure of respondent's agent to properly identify himself and/or his violation of Internal Revenue Service procedures was dismissed); 9. Hefti v. Loeb, No. 91-3311, 1992 U.S. Dist. LEXIS 12644 (C.D. Ill., Aug. 12, 1992) (petitioners sued respondent's district director for alleged violation of section 6103 on the grounds that respondent disclosed Mr. Hefti's 1987 tax return information to Mrs. Hefti in correspondence concerning petitioners' 1986, 1987, and 1988 tax years; that case was dismissed with prejudice.). Petitioners' *139 1980, 1981, and 1982 income tax liabilities were redetermined by this Court in Hefti v. Commissioner, T.C. Memo. 1988-22, affd. without published opinion 894 F.2d 1340 (8th Cir. 1989), cert. denied 495 U.S. 933 (1990). In that opinion, we made specific findings of fact and conclusions concerning petitioners' business use of their residence and the allowable amounts of various deductions claimed by petitioners. Petitioners' 1986, 1987, and 1988 income tax returns contain many of the same categories of items which were decided in Hefti v. Commissioner, supra.
Respondent's agent notified petitioners by means of a photocopy of a form letter that their 1986, 1987, and 1988 taxable years were to be examined. The form that had been copied was the normal form used to notify taxpayers of the examination of their returns. The photocopy did not reflect the form number of the letter or its revision date. Petitioners, apparently based upon prior dealings with respondent, believed that there was certain information missing from respondent's master file computer data base. Based upon these claimed *140 defects, petitioners, in a letter dated April 24, 1990, refused to submit to an examination of their 1986, 1987, or 1988 income tax returns unless respondent's agent first completed a questionnaire devised by petitioners. The questionnaire, in addition to requiring identification of respondent's agency and agent, pertains to the nature and purpose of respondent's examination and respondent's authority to examine petitioners. Respondent's agent, in an attempt to comply with petitioners' requirements, sent a letter dated April 27, 1990, that identified himself and his agency and provided the Internal Revenue Code provisions authorizing examination of petitioners' returns and books and records. Petitioners, by a letter dated April 28, 1990, continued to refuse to submit to examination. Petitioners provided the following reasons for their refusal: (1) Even though petitioners agreed that the statutes referenced by respondent authorized examination of their return, they pointed out that respondent's agent had not shown that he was properly authorized or had been delegated the authority to examine petitioners under the statutes referenced and (2) that there are "many types of federal *141 income tax" and respondent did not advise which type was under examination. After the exchange of letters and petitioners' continuing refusal to submit to examination unless respondent complied with all of petitioners' conditions, respondent determined deficiencies in petitioners' 1986, 1987, and 1988 taxable years by reference to the percentage allowances decided by this Court for the same categories of tax items for earlier years. See Hefti v. Commissioner, supra.
After their petitions were filed in these cases, petitioners brought their records to respondent's office and the parties reached agreement with respect to certain of the deductions claimed by petitioners. Additionally, petitioners substantiated all expenditures involved, and the remaining disputes between the parties involve whether items are deductible and, if deductible, whether they are business deductions (Schedule C) or itemized deductions (Schedule A). Business Deductions -- "Cost of Goods Sold"
[4]
*142 Petitioners claimed various expenses during each of the three taxable years in connection with the business. These expenses included categories of items such as promotion, cleaning, periodicals, etc. Petitioners, in reporting these items on their returns, designated them as "Cost of Goods Sold". After petitioners refused to submit to an audit of their 1986 through 1988 tax years, respondent issued notices of deficiency wherein the amounts allowed as cost of goods sold items were based on the same percentages this Court had determined for the taxable years through 1980 through 1982 in Hefti v. Commissioner, supra.
Relatively near to trial of this case, petitioners submitted records to respondent and, prior to trial, respondent agreed that certain of the deductions claimed by petitioners were allowable. After trial, on brief respondent conceded that petitioners were entitled to items in addition to those agreed to prior to trial. The following schedule reflects the total amount of cost of goods sold claimed on the return, the amount disallowed in the notice of deficiency, the amount conceded by respondent, and the amount remaining in dispute. Claimed
Disallowed in
Conceded by
Remaining
Year
on Return
Notice
Respondent
in Dispute
1986
$ 36,219
$ 6,581
$ 4,309.12
$ 2,271.88
1987
19,956
3,626
3,065.49
560.51
1988
10,843
1,970
-0-   1,970.00
*143 Petitioners prepared schedules of their cost of goods sold, listing expenditures for various items. Respondent has specifically listed each item that remains in dispute by reflecting the total for each category and the page and line number of the schedule where each subitem is identified. The following schedule reflects the year and totals for each category of items remaining in dispute: Item
1986
1987
1988
Promotion
$ 1,215.84
$ 149.24
$ 303.10
Cleaning
378.24
31.13
30.58
Periodicals
249.47
-0- -0- Tax books
18.87
-0- -0- "AFTRA"
348.59
283.14
-0- Florists
60.87
-0- -0- Delivery
-0- 17.00
-0- Bookkeeping
-0- 80.00
-0- Cost of labor
-0- -0- 1,711.00
Total    $ 2,271.88
$ 560.51
[1] $ 2,044.68
*144 With respect to the amounts remaining in dispute, respondent argues that petitioners must show that the disputed items are ordinary and necessary expenses incurred in carrying on their business, sec. 162, and/or that they were not personal and nondeductible expenditures, sec. 262. Additionally, with respect to the promotion items (consisting of beverages, snacks, and entertainment items provided to clients), respondent argues that petitioners must meet the requirements of section 274(d). Concerning the promotion category, petitioners claimed $ 1,215.84, $ 149.24, and $ 303.10 for beverages and candy for 1986, 1987, and 1988, respectively. Petitioners provided evidence of the purchase of these items along with testimony by Mr. Hefti that all of these beverages and candy were for the benefit of customers. Mr. Hefti, in his testimony, gave the impression that customers were regularly frequenting his place of business for meetings and, occasionally, just to pass the time. Mr. Hefti referenced various billing documents to identify the clients who frequented his place of business and who could have partaken of the beverages and candy. Although we do not doubt that hospitality was *145 shown to clients, we find petitioners' testimony to be self-serving, somewhat exaggerated, and generally refuted by the evidence. We find it significant that petitioners' gross receipts for 1986 and 1987 were comparable ($ 87,853.21 and $ 81,276, respectively) and yet the amounts claimed for beverages and candy are grossly disparate ($ 1,215.84 and $ 149.24, respectively). Petitioners provided no explanation of why they reduced their purchases or claims for the cost of beverages and candy during 1987 or why there was a vast disparity between the two years. We find and conclude that for 1986, 1987, and 1988 petitioners provided beverages and candy for the use of their clients in the amounts of $ 150, $ 149.24, and $ 150, respectively. We find the remainder of the claimed and disallowed promotion items not to be deductible. Having decided that some portion of the beverages and candy was purchased and provided to clients, we must consider whether petitioners met the requirements of section 274. Solely with respect to 1986, [5]section 274(e)(1) provided an exception to the more rigorous requirements of section 274(a)(1)(A) concerning entertainment of clients. Section 274(e)(1) *146 specifically covered: Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.
With respect to all three years, petitioners must meet the requirements of section 274(d). Under that section, petitioners must substantiate by adequate records or evidence corroborating their testimony (a) the amount of the item, (b) the time and place of the entertainment, (c) the business purpose of the item, and (d) the business relationship of the persons entertained. We find that petitioners have met the requirements *147 of section 274 with respect to the amounts of $ 150, $ 149.24, and $ 150, for 1986, 1987, and 1988, respectively. Next, we consider the deductions claimed for "AFTRA" for 1986 and 1987 in the amounts of $ 348.59 and $ 283.14, respectively. Those amounts represent payments for union pension and welfare benefits for Mr. Hefti and for actors used in the business. To the extent that the payments are for Mr. Hefti, they represent either capital expenditures or nondeductible personal expenditures. Sims v. Commissioner, 72 T.C. 996, 1005 (1979); Davidson v. Commissioner, 42 T.C. 766 (1964). To the extent that the payments are on behalf of actors used by Mr. Hefti in his business activity, the payments would be deductible as an ordinary and necessary business expense under section 162. Petitioners' records do not show the amount of the payments which was attributable to Mr. Hefti and the amount attributable to actors used in the business. Further, petitioners did not make that distinction in their testimony. There is insufficient evidence from which to estimate the nondeductible portion of this item, and we are not disposed *148 to guess at what might be an appropriate amount. Accordingly, no portion of the "AFTRA" amounts remaining in dispute for the 1986 and 1987 taxable years is deductible. Concerning the cleaning supplies for 1986, 1987, and 1988 in the respective amounts of $ 378.24, $ 31.13, and $ 30.58, petitioners, on brief, argue that the amounts claimed are reasonable based upon the fact that the business portion of the residence was over 6,326 square feet. The 6,326-square-foot number is based upon petitioners' argument that more than 60 percent of their residence was used for business purposes. Petitioners also argue that they segregated and did not claim the portion of the supplies which they considered personal. It appears that petitioners' segregation was based upon the contended square-foot business usage. Because we find that the square-foot usage was approximately one-half of the amount claimed, [6] *149 an equivalent portion of supplies would also not be deductible and we so hold. Accordingly, petitioners are entitled to a deduction for cleaning supplies in 1986, 1987, and 1988 in the respective amounts of $ 189.14, $ 15.57, and $ 15.29. [7]
The "Cost of Labor" for 1988 in the amount of $ 1,711 represented four separate checks, in the $ 400 range, which were drawn to petitioners' son who was about 12 or 13 years old during the years under consideration. When questioned about his method of determining the amount that his son was paid, Mr. Hefti testified that he just came up with an amount. He did not provide any evidence of the amount of hours, specific tasks, or other quantitative or qualitative method from which the amount of payment could be determined. Additionally, we must consider that the work was being performed in petitioners' home by a related minor. Those circumstances serve to exacerbate petitioner husband's failure to proffer or use a discernable method of remunerating his son. We hold that petitioners have failed to carry their burden of proving their entitlement to the $ 1,711 cost of labor amount *150 claimed for their 1988 taxable year. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners claimed a deduction on their 1986 return for periodicals in the amount of $ 249.47; however, petitioners did not provide sufficient evidence to show that the magazines were for business rather than personal use. Rule 142(a); Welch v. Helvering, supra.
With respect to the remaining categories of items, petitioners have provided sufficient evidence to substantiate their deductibility as ordinary and necessary business expenses. Accordingly, petitioners are entitled to the following claimed amounts: 1986
1987
Tax books
$ 18.87
-0-
Florists
60.87
-0-
Delivery
-0- $ 17 Bookkeeping
-0- 80 Business Use of Petitioners' Residence
Facts
Petitioners operated their business enterprise exclusively out of their residence during 1986 and 1987. Petitioners' residence was comprised of two attached buildings: a main building comprised of a basement and three stories with a two-car garage on the first level under which there was no basement area, and adjoining the main building, a second two-story *151 building (the addition) which was attached to the main building by a breezeway. The addition was designed as a four-car garage on the first level and subdivided rooms on the second level. For the taxable years 1986 and 1987, petitioners claimed that 69.2 percent and 66.5 percent, respectively, of their residence was used for business purposes. Petitioners did not claim any business use of their residence for 1988, and during that year the business activity was moved to an office which was not connected with or adjacent to petitioners' residence. Discussion -- Use of Residence
Petitioners bear the burden of proving entitlement to deductions that respondent has disallowed. Rule 142(a); Welch v. Helvering, supra. Section 167 allows taxpayers to deduct as depreciation a reasonable allowance for wear and tear of property used in a trade or business. Where, however, taxpayers use a portion of their dwelling or residence for business purposes, special rules and limitations have been established by Congress. Section 280A provides, in pertinent part, as follows: (a) General Rule. -- Except as otherwise provided in this section, in the case *152 of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * * * * * (2) Certain storage use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business.
Therefore, *153 we must determine whether petitioners used each of these rooms "exclusively" and on a "regular basis" or whether any portion of a room was used for storage of business inventory. The legislative history underlying the 1976 enactment of section 280A contains the following commentary on the term "exclusive", S. Rept. 94-938, at 148, 1976-3 C.B. (Vol. 3) 49, 186: Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. Thus, for example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or engage in similar activities as well for personal purposes, will be denied a deduction for the expenses paid or incurred in connection with the use of the residence which are allocable to these activities. * * *
Respondent, during 1980 and 1983, issued section 1.280A-2(g)(1), Proposed Income Tax Regs., 45 Fed. Reg. 52404 *154 (Aug. 7, 1980), which remains outstanding, defining the "exclusive use requirement" as follows: (g) Exclusive use requirement -- (1) In general. Paragraph (b), (c), or (d) of this section may apply to the use of a portion of a dwelling unit for a taxable year only if there is no use of that portion of the unit at any time during the taxable year other than for business purposes. For purposes of section 280A(c)(l) and this section, the phrase "a portion of the dwelling unit" refers to a room or other separately identifiable space; it is not necessary that the portion be marked off by a permanent partition. * * *
The Senate report underlying the 1976 enactment of section 280A also contains comments concerning the "regular basis" requirement in S. Rept. 94-938, at 148-149, 1976-3 C.B. (Vol. 3) at 186-187, as follows: In addition to the exclusive use test, the committee's amendment requires that the portion of the residence used for trade or business purposes must be used by the taxpayer on a regular basis in order for the allocable portion of the expenses to be deductible. Expenses attributable to incidental or occasional trade or business *155 use of an exclusive portion of a dwelling unit would not be deductible even if that portion of the dwelling unit is used for no other purpose.
In meeting the stringent conditions imposed by Congress on the use of a dwelling or residence for business purposes, petitioners have the burden of showing they meet the exclusive and regular use requirements of section 280A as explained in the legislative history. Any personal use of a room or segregated area will preclude its use in computing depreciation or other allocable expenditures, unless some or all of the use of the room was for the storage of inventory. Petitioners were confronted with the same burden in a prior case [8] wherein they contended that 89 percent of their main residence and 100 percent of their addition was exclusively and regularly used for business purposes during the taxable years 1980, 1981, and 1982. As they have similarly done in this case, they went to great lengths to use nomenclature intended to convince us that a dining room is a "conference room" and a living room or den is "Room 102" or some type of music room because, in addition to other normal household furnishings, it contains a piano. After review *156 of the transcript, documentary evidence, and the parties' briefs, we held in the prior case that 25 percent or less of the main portion of the residence met the requirements of section 280A.
The record before us leads us to a similar conclusion. The evidence presented by petitioners consists of substantially the same photographs offered in the prior case. The photographic evidence fails to establish that petitioners have met the exclusive use requirement of section 280A. These photographs reflect only the portions of rooms that contain equipment which petitioners contend was used in their business. The pictures reflect that petitioners' residence was essentially like any other in that it generally contained household furniture, such as tables, chairs, couches, and other furniture that would *157 be suitable for personal residential use. Petitioners' photographs [9] reflect various pieces of equipment, such as recorders, plastic cases for tape, etc. placed on various pieces of furniture. It appears as though petitioners scattered all their business equipment in various rooms in an attempt to support their claim that they used for business purposes nearly 90 percent of their residence during the early 1980's and 69.2 percent and 66.5 percent, respectively, during 1986 and 1987. *158 Petitioners claim that the addition is used solely for business purposes. Curiously, the photographs reflect that the addition contains relatively little of petitioners' electronic equipment with the exception of one room on the second level and in the four-car garage area. In this connection, it appears from the photographs that the four-car garage is also used for storage of personal furniture and some type of trailer vehicle. Petitioners argue that their records reflect the actual use of each of the rooms claimed for business purposes. Petitioners' argument does not fully address their burden of proof on this issue. We consider petitioners' notations on these documents to be no less self-serving than their testimony on the same subject, and petitioners must still show exclusive business use of the rooms claimed for business purposes. We are also skeptical of petitioners' claim that as their business contracted they used less and less of their residence for business purposes. In addition to inconsistent evidence on this point, it is difficult to accept petitioners' argument that they did not have need for the equipment (scattered throughout the house), due to a reduction *159 in the amount of gross receipts. If the machinery depicted in various rooms by petitioners' photographs is to be accepted as appropriately located, petitioners' contraction argument defies logic. Petitioners provided no plausible explanation as to what specific aspect of their business related to the cessation of the use of particular rooms or equipment. Our conclusion that petitioners are not entitled to a percentage of business use greater than that previously determined is further supported by the fact that at a prior trial during February 1986 Mr. Hefti testified that the rooms were being used substantially the same in 1986 as they had been used in 1980, 1981, and 1982. Accordingly, we find that for 1986 and 1987 petitioners meet the requirements of section 280A, on a room-by-room basis, as follows: Percentage Business Use
Square Feet
For 1986
For 1987
Room Number
Room
Allowed
Claimed
Allowed
Claimed
Allowed
001
450
113
100
25
100
25
002
160
0
0
0
0
0
003
346
0
100
0
100
0
004
25
0
0
0
0
0
005
10
0
0
0
0
0
006
347
347
100
100
100
100
101
374
0
100
0
100
0
102
240
0
0
0
0
0
103
160
0
0
0
0
0
104
240
0
100
0
0
0
105
40
0
0
0
0
0
106
10
0
0
0
0
0
107
261
0
0
0
0
0
108
14
0
0
0
0
0
109
546
0
0
0
0
0
201
235
235
100
100
100
100
202
24
24
100
100
100
100
203
76
76
100
100
100
100
204
172
172
100
100
100
100
205
10
10
100
100
100
100
206
29
29
100
100
100
100
207
172
0
100
0
100
0
208
233
233
100
100
100
100
209
15
15
100
100
100
100
210
25
25
100
100
100
100
211
43
0
100
0
100
0
212
61
0
0
0
0
0
213
240
0
0
0
0
0
214
69
0
0
0
0
0
215
42
42
100
100
100
100
216
10
10
100
100
100
100
217
409
409
100
100
100
100
301
332
0
0
0
0
0
302
154
0
0
0
0
0
303
115
0
100
0
100
0
304
132
0
100
0
100
0
305
67
0
0
0
0
0
306
13
0
0
0
0
0
307
213
0
0
0
0
0
308
835
0
100
0
100
0
101A
1,132
0
100
0
100
0
102A
14
0
0
0
0
0
201A
79
0
100
0
100
0
202A
95
0
100
0
100
0
203A
51
0
100
0
100
0
204a
187
0
100
0
100
205A
51
0
100
0
100
0
206A
55
0
100
0
100
0
207A
14
0
100
0
100
0
208A
181
0
100
0
100
0
209A
4
0
100
0
100
0
210A
7
0
100
0
100
0
211A
33
0
100
0
100
0
212A
56
0
100
0
100
0
213A
99
0
100
0
100
0
214A
69
0
100
0
100
0
215A
66
0
100
0
100
0
9,142
1,740
*160 Because our finding here results in the same amount found by respondent, respondent's depreciation determination will remain undisturbed. Exemption for Wife -- 1987 Taxable Year
Facts
Petitioners filed joint returns for the 1986 and 1988 taxable years. With respect to the 1987 taxable year, however, Mrs. Hefti did not join Mr. Hefti in filing a joint return. Although Mrs. Hefti did not join Mr. Hefti in filing the 1987 return, Mr. Hefti claimed dependency exemptions for Mrs. Hefti, along with their two children for that taxable year. During the 1987 taxable year, petitioners jointly owned rental real property from which $ 1,555 in gross receipts was reported. The rental property activity resulted in a reported net loss of $ 3,270. Mr. Hefti reported the rental income activity on his separate return for 1987. Mrs. Hefti did not file a separate return or separately report the income and deductions attributable to the rental property. Discussion
Section 151(b) provides that a taxpayer who is not filing a joint return may claim a dependency exemption for a spouse if the spouse has no gross income and is not the dependent of another taxpayer for the year in *161 question. Accordingly, Mr. Hefti must show that Mrs. Hefti was not the dependent of another and that she did not have any gross income for 1987. Respondent contends that Mr. Hefti is not entitled to a dependency exemption for Mrs. Hefti because she had gross income during the 1987 taxable year. Mr. Hefti argues that he was the actual recipient of the rent or gross receipts and that his Social Security number had been provided so that only his name appeared on the Form 1099 reporting the income to the Internal Revenue Service and petitioners. Accordingly, petitioners see this as an issue of actual versus constructive receipt. We agree with respondent and find that it makes no difference as to whether Mrs. Hefti actually received the rents. The rents, to some extent, constituted her gross receipts and, accordingly, Mr. Hefti is not entitled to claim Mrs. Hefti as an exemption for the 1987 taxable year. Although the gross receipts requirement of section 151(a) results in a denial of an exemption, the statute does not permit any other result. We also note that petitioners, for undisclosed reasons of their own choosing, decided not to file a joint return for 1987. Investment *162 Tax Credit Carryovers from Earlier Years
Petitioners claim entitlement to investment tax credit carryforwards from prior years (prior to 1986). In support of their claim, petitioners offered copies of their 1980 through 1985 income tax returns and/or Forms 3468 (Computation of Investment Credit). Respondent contends that petitioners are not entitled to investment credit carryforwards because they have not carried their burden of showing that those credits were not consumed in prior years. In similar cases, we have held that taxpayers cannot carry this burden merely by introducing their prior years' tax returns (or schedules) in which the credits had been claimed. See Sherwood v. Commissioner, T.C. Memo. 1988-544; Egly v. Commissioner, T.C. Memo. 1988-223. Petitioners have attempted to carry their burden simply by introducing their prior returns or claims concerning the credits. On this record, petitioners have failed to carry their burden of showing entitlement to investment credit carryforwards to any of the years before the Court. Litigation Expense Deduction
Facts
Petitioners, during 1986 through *163 1988 were involved in numerous legal controversies. In addition to two separate controversies in this Court, petitioners were involved in two different summons enforcement actions that had been commenced by respondent. [10] Petitioners also sued several of respondent's employees in connection with alleged violations of petitioners' constitutional rights. On July 15, 1986, respondent issued an administrative summons under section 7602 to petitioners in connection with an examination of their 1983 and 1984 tax years. On August 4, 1986, petitioners filed a motion to quash *164 charging that the summons was not issued to further an examination of petitioners' income tax returns, but was issued for purposes of harassment. Respondent sought enforcement of the summons in the U.S. District Court. On February 4, 1987, the U.S. magistrate recommended enforcement of the summons. On September 28, 1987, the U.S. District Court ordered the summons enforced. On November 3, 1987, the court stayed enforcement to afford petitioners an opportunity to appeal. On December 7, 1987 (while petitioners were appealing the summons enforcement order), respondent determined deficiencies in petitioners' 1983, 1984, and 1985 tax years. Petitioners, in response to the notice of deficiency, petitioned this Court for a redetermination only with respect to 1983. On January 13, 1988, the Court of Appeals for the Eighth Circuit denied petitioners' motion to stay enforcement of the September 28, 1987, order. Respondent then moved to have petitioners held in contempt for failure to comply with the District Court's order of September 28, 1987. On February 19, 1988, petitioners were ordered to produce the summoned records on or before March 15, 1988. In that order, petitioners were *165 put on notice that after March 15, 1988, they would be fined $ 500 for each day of noncompliance. On March 21, 1988, petitioners filed a memorandum and affidavit stating that they had complied with the order. Respondent filed a motion to reduce the fine to judgment and for a bench warrant, contending that petitioners did not comply with the February 19, 1988, court order. On July 1, 1988, a hearing was held to determine whether petitioners had complied with the court's order. On July, 13, 1988, petitioners were held in contempt and the court granted respondent's motion to reduce an accrued $ 38,000 fine to judgment and for issuance of a bench warrant for petitioners' arrest. Petitioners were given 10 days to pay the $ 38,000 into the registry of the court and comply with the summons or be arrested and incarcerated. On July 21, 1988, petitioners appealed the July 13, 1988, contempt order to the Eighth Circuit Court of Appeals. The Court of Appeals, on July 22, 1988, granted a temporary stay but it was vacated on August 9, 1988. Concurrent with the foregoing events, another summons enforcement proceeding was begun with respect to petitioners' 1985 tax year. That summons was *166 served upon petitioners on February 17, 1987. Respondent commenced summons enforcement on June 22, 1987. On November 13, 1987, the U.S. District Court, Eastern District of Missouri, ordered petitioners to comply with the Internal Revenue Service (IRS) summons. When petitioners failed to comply, the court, on February 26, 1988, issued an order to show cause why petitioners should not be held in contempt. After a March 25, 1988, hearing, petitioners were ordered on April 6, 1988, to comply with the summons issued to them by April 11, 1988, and that if either petitioner failed to comply by that date, they would be in contempt and fined $ 50 per day until compliance. Petitioners appealed the April 6, 1988, and July 13, 1988, contempt orders and both orders were affirmed. United States v. Hefti, 879 F.2d. 311 (8th Cir. 1989). Petitioners sought a writ of certiorari, which was denied on February 20, 1990. Hefti v. United States, 493 U.S. 1076 (1990). Ultimately, Mrs. Hefti was incarcerated for contempt. On May 24, 1988, petitioners brought suit in the U.S. District Court for the Eastern District of Missouri against *167 six employees of respondent, alleging jurisdiction pursuant to 28 U.S.C. section 1331 and claiming violation of their rights under the First, Fourth, and Fifth Amendments to the U.S. Constitution. On September 19, 1988, petitioners filed an amended complaint against the same defendants, alleging jurisdiction pursuant to 42 U.S.C. sections 1983, 1985, 1986, and 1988 and 28 U.S.C. sections 1331 and 1343 and claiming violation of their Fourth, Fifth, and Fourteenth Amendment rights. On October 6, 1988, petitioners filed a second amended complaint against the same defendants, further alleging that "this action is brought pursuant to the doctrine established in Bivens v. Six Unknown Named Agents [sic], 403 U.S. 388 (1971)." Petitioners alleged that an IRS agent searched their home on or about August 15, 1983, during the course of an IRS audit of petitioners' business (income tax returns) for the tax years 1980-82. Petitioners further alleged that the agent and his supervisor conducted a second inspection of their residence on or about December *168 1, 1983. Petitioners contended that those inspections were unnecessary because the IRS had conducted previous "searches" of their home and had previously obtained the information sought in these inspections. The inspection of petitioners' residence was ordered by this Court pursuant to respondent's motion and in connection with controversy concerning the amount of exclusive business use of petitioners' residence. That was a major issue decided in Hefti v. Commissioner, T.C. Memo. 1988-22, affd. without published opinion 894 F.2d 1340 (8th Cir. 1989), cert. denied 495 U.S. 933 (1990), as it is in this case. Petitioners also challenged the scope of a May 16, 1985, search of their home by respondent. They contended that this inspection exceeded the directive of the Tax Court limiting the inspection solely to business areas within their home. This claim raises an interesting paradox. The order permitted the Commissioner to investigate the portion of the home used for business. Petitioners claimed slightly less than 90 percent of their home as a home office, and respondent contended the amount *169 of business use was substantially less. Thus, the more space petitioners claim as a home office, the weaker is their claim of excessive inspection. Petitioners also alleged IRS personnel moved furniture and took pictures of business areas to make them appear as though they were residential areas of the house. Further, petitioners charged that at some time between August 1983 and February 1986 portions of their financial and tax records were destroyed or lost by "unspecified persons" under the guidance of the IRS agent. Finally, petitioners alleged that an IRS attorney falsely stipulated before the Tax Court that the IRS had furnished the Tax Court with "true and correct photocopies" of petitioners' records. Petitioners were unsuccessful in all these matters. Discussion -- Litigation Expenses
Petitioners claimed several legal expense deductions for the years 1986, 1987, and 1988. These expenses consisted of litigation of petitioners' tax liability, protest of the summons enforcement order, and appeal of the contempt order and the Bivens-related claim. With respect to most of these deductions, respondent agrees they are deductible and the remaining issue is whether *170 these expenses are deductible under section 162 or section 212. Section 162 provides for the deduction of ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 212(3) provides, in the case of an individual, a deduction for the ordinary and necessary expenses incurred in connection with the determination, collection, or refund of any tax. Section 212 concerns those activities which are not part of a taxpayer's trade or business and are in pursuit of an income-producing activity. Section 212 provides that "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year * * * in connection with the determination, collection, or refund of any tax." That language was not intended to preclude an individual taxpayer from deducting expenses under section 162 which are proximately related to the taxpayer's business. Wood v. Commissioner, 37 T.C. 70, 75 (1961). Section 212(3) broadens the scope for individuals to deduct nonbusiness expenses. It does not deprive individuals of business deductions that they *171 are entitled to take absent section 212. Id. at 76. The major difference, for tax purposes, between section 162 and section 212 characterization is how the deduction affects a taxpayer's gross income and adjusted gross income. Section 162 deductions, commonly referred to as "above the line deductions", are subtracted from gross income in computing a taxpayer's adjusted gross income. Section 212 deductions, commonly referred to as "below the line deductions" or "itemized deductions", are subtracted from adjusted gross income and are subject to several floor limitations. Characterization of the expenses under section 212 would, of course, have a more profound effect upon a taxpayer who is unable to itemize because they fall below the threshold of the minimum standard deduction. Thus, section 162 deductions are more valuable to a taxpayer. We will consider whether each category of legal expenses is governed by section 212 or 162 deductions. We will also consider whether certain of the claimed legal expenses are personal and nondeductible. Sec. 262. A. Litigation of Tax Liability
Petitioners, on their Schedule C for 1986, claimed deductions *172 for litigation of their 1983 and 1984 Federal income tax liability. For 1987, petitioner husband claimed a similar deduction with respect to the litigation of the 1980-82 taxable years. Respondent concedes the deductibility of such legal expenses, except for certain expenses totaling $ 133.87 in 1986. Respondent, however, maintains that such expenses are primarily connected with the determination of petitioners' personal tax liability and not business tax liability. Respondent maintains that these deductions should have been claimed as section 212 deductions. Whether deductible under section 162 or section 212, the expenditure must be "ordinary and necessary". Respondent does not argue that the expenses to litigate petitioners' tax liability are not "ordinary and necessary". The remaining dispute concerns the characterization of these expenses as business or itemized deductions. The distinguishing factor between a section 162 or 212 classification is the origin and character of the claim with respect to which the expense was incurred and whether it is connected with the taxpayer's business. United States v. Gilmore, 372 U.S. 39 (1963). Petitioners *173 operated a sole proprietorship. Respondent's determination involved petitioners' business deductions claimed on Schedule C. Although respondent determined and we have found that some portion of the amounts claimed were nondeductible and/or personal, essentially the origin and character of the controversy is petitioners' business. Accordingly, the legal expenses claimed in connection with the litigation of petitioners' tax liability are business related and deductible under section 162. The $ 133.87 disallowed by respondent in 1986 was to purchase four meals during meetings with petitioners' attorney. In order to take a deduction under section 162 for travel or entertainment, petitioners must meet the requirements set out in section 274(d) and (k). Section 274(d) requires that the taxpayer have adequate records or sufficient evidence corroborating the taxpayer's own statement of the amount of the expense, the time and place of the expense, the business purpose of the expense, and business relationship. Petitioners have met these requirements. Section 274(k) requires that the expense not be lavish and that the taxpayer be present at the furnishing of the food or beverage. Petitioners *174 have also met these requirements. The expense is allowable under section 162, but is subject to section 274(n), which allows only 80 percent of the expense for business meals. Therefore, $ 107.10 of the $ 133.87 is allowed as a section 162 business deduction. B. Summons Enforcement Litigation
Petitioners claimed a business deduction under section 162 in 1987 and 1988 relating to expenses incurred in challenging the September 28, 1987, summons enforcement. Such expenses occurred before and did not relate to the contempt proceedings. Respondent determined that the entire expense was deductible as a section 212 deduction. In the same manner as the litigation of petitioners' tax liabilities, respondent does not argue that the expense is not "ordinary and necessary". Once again we look to the origin and character of the claim with respect to which the expense was incurred to determine if such expense was connected with petitioners' business. United States v. Gilmore, supra.We are unable to make any meaningful distinction between the defense of an administrative summons enforcement and the contest of one's tax liability. Each taxpayer, *175 within the statutes and rules, may use a different approach in dealing with the examination of his tax liability. Within certain limits, it would be difficult to generally question whether it is ordinary or necessary to comply with or to resist compliance of the Government's request for records or enforcement of a summons. Although petitioners were relatively aggressive in their approach to the summons, we find the legal expenses incurred up until the time of the contempt proceeding to be consistent with the litigation of a tax determination and deductible by petitioners under section 162. C. Appeal of Summons Enforcement Order and Contempt
Respondent maintains that the expenses paid after February 19, 1988, in connection with petitioners' protest of the 1983 and 1984 tax years are nondeductible because such litigation involved appeals of contempt and were no longer related to the determination of petitioners' tax liability. Respondent further argues that, after the Eighth Circuit Court of Appeals denied petitioners' motion to stay the District Court's order enforcing the summons on January 13, 1988, petitioners' defenses to compliance with the summons had been fully litigated *176 and subsequent litigation no longer pertained to their tax liability or profit-seeking activities. Unlike the litigation expense deductions discussed above, respondent does not concede that the expenses are deductible under section 212. Therefore, in order to be deductible under either section 212 or section 162, petitioners must first show that these expenses were ordinary and necessary. We hold that these expenses were not ordinary and necessary and, therefore, not deductible under either section 162 or section 212. "Ordinary and necessary" implies that they must be reasonable in amount and must bear a reasonable and proximate relation to the management of property held for the production of income or to the determination, collection, or refund of any tax. See Trust of Bingham v. Commissioner, 325 U.S. 365 (1945). Respondent argues that petitioners' grievance with the summons was not directed to a determination of their tax liability, but over nontax grievances against Internal Revenue Service personnel and procedures. "Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions *177 of fact in most instances." Commissioner v. Heininger, 320 U.S. 467, 475 (1943). What is deemed necessary is "affected by time and place and circumstance." Welch v. Helvering, 290 U.S. 111, 113-114 (1933). The determination of "ordinary or necessary" is thus an objective standard based on the facts known to the taxpayer at the time the expense was incurred. The U.S. District Court ordered petitioners to comply with the summons on September 28, 1987. Petitioners appealed, and on January 13, 1988, the Eighth Circuit Court of Appeals denied petitioners' motion to stay enforcement of the order. On February 19, 1988, the U.S. District Court ordered petitioners to produce the summoned records. We do not have to second-guess the District Court's opinion to determine if it was reasonable. The standard requires that we consider the facts and circumstances available to petitioners at the time, and to decide whether it was reasonable (ordinary and necessary) not to pay the fine and later appeal the contempt order of July 13, 1988. The February 19, 1988, order to turn over the records upheld previous determinations of the U.S. *178 magistrate, the U.S. District Court, and the Eighth Circuit Court of Appeals. Petitioners, with this knowledge, still did not comply with the summons or pay the fine. Petitioners claim to have complied with the order, but did not. Given the history of litigation, it was not reasonable or necessary for petitioners to continue their noncompliance with the order. Our holding is reinforced by the fact that petitioners were ultimately found to be in contempt. The expenses incurred litigating the summons enforcement and contempt proceeding after February 19, 1988, are not "ordinary and necessary", and therefore, not deductible under section 162 or 212. D. Suit Against Employees of IRS -- Bivens Claim
Petitioners brought suit in the U.S. District Court for the Eastern District of Missouri against six employees of the IRS claiming violations of their Fourth, Fifth, and Fourteenth Amendment rights. In a second amended complaint, petitioners alleged violations based on the claim developed and known as Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). In Bivens, the plaintiff complained that an agent of the Federal Bureau of *179 Narcotics, acting under a claim of authority, entered the plaintiff's apartment and arrested him for alleged narcotics violations. The Court found that the search was done unlawfully, unreasonably, and contrary to law. The Bivens doctrine allows Federal agents to be sued in their individual or personal capacity in these situations. Petitioners claimed, under section 162, a business deduction for legal expenses incurred in 1988 in the amount of $ 5,301.19 in connection with the pursuit of redress for alleged violation of their constitutional rights. Respondent proffers two arguments in opposition of deductibility. First, respondent argues that section 265 precludes the deductibility of the legal expenses in which damages received are wholly exempt from taxes. However, petitioners have not received damages under this claim. [11] Absent any damage award, sections 104(a)(2) and 265 are not applicable.
*180 Respondent's second argument is that petitioners' suit is inherently personal and therefore nondeductible. Sec. 262. Respondent argues that petitioners' claim of a business purpose is ancillary to a primarily personal suit. If the origin of the matter which is the subject of the litigation is personal, the related expenses are not deductible even though the taxpayer's business may suffer or benefit. Rafter v. Commissioner, 60 T.C. 1, 10 (1973), affd. without opinion 489 F.2d 752 (2d Cir. 1974). The origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal". United States v. Gilmore, 372 U.S. 39 (1963). Petitioners claim that their Fourteenth Amendment rights were violated by an illegal search by the IRS agents. In making such a claim, petitioners are expressing a predominately personal claim. It is true that such claim has potential consequences which may affect petitioners' livelihood, but the essential origin *181 and character of the claim is that petitioners' individual or personal rights have been violated. Moreover, to be entitled to a section 162 or 212 deduction, the expense must be "ordinary and necessary". "Ordinary and necessary" implies that the expense must bear a reasonable and proximate relation to the business or other qualifying activity. Trust of Bingham v. Commissioner, 325 U.S. 365 (1945). Ordinarily, questions of reasonableness and proximity are for the trier of fact, in this instance the Court. Id.; Commissioner v. Heininger, 320 U.S. 467, 473 (1943). While "ordinary" does not mean that the expense must be habitual or normal in the sense that the same taxpayer will have to make it often, "ordinary" has the connotation of normal, usual, or customary. Welch v. Helvering, 290 U.S. 111, 113 (1933); Kornhauser v. United States, 276 U.S. 145 (1928). The transaction which gives rise to it must be of common or frequent occurrence in the type of business involved. A Bivens claim cannot be labeled "common" in petitioners' business. Therefore, *182 the expenses incurred in litigating the claim are not deductible under section 162 or 212 and are personal and nondeductible within the meaning of section 262. Additions to Tax Under Sections 6653(a)(1)(A) and (B), 6653(a)(1), 6661(a)
Respondent determined additions to tax for negligence or intentional disregard of the rules and regulations with respect to all three of the years before the Court. For the years under consideration sections 6653(a)(1)(A) and 6653(a)(1) provide for a 5-percent addition to tax if any part of any underpayment of tax is due to negligence or intentional disregard of the rules and regulations. Also, under section 6653(a)(1)(B) an additional 50 percent of the interest is payable with respect to the underpayment subject to the negligence addition. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct, and the taxpayer has the burden of proving the determination is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). *183 Petitioners contend that they were not negligent because they have substantiated all of the amounts claimed on their return. It is true that there is no remaining dispute regarding whether petitioners expended the amounts claimed on the return. The controversy in these cases, however, involves questions of whether petitioners claimed personal expenditures as business deductions, whether the amounts claimed exceeded the amounts that were actually involved in the business enterprise, and whether the deductions claimed were ordinary and necessary. We have found in this opinion that the amounts of business use claimed by petitioners were excessive and that numerous deductions were either nondeductible or not deductible as claimed. We note that this is the third time that petitioners have sought to litigate essentially the same issues which were raised and decided in a prior opinion. We also note that petitioners' pre-audit requirement that respondent delineate the type of income tax under examination was frivolous. In view of the foregoing we find that petitioners are liable for additions to tax for negligence and intentional disregard of rules and regulations for 1986, 1987, and *184 1988. Section 6661 provides for an addition to tax equal to 25 percent of any underpayment attributable to a substantial understatement of income tax. Petitioners have not shown that this addition should have been waived under section 6661(c) or that there should be any reduction to the understatement under section 6661(b)(2)(B). Accordingly, the section 6661 addition to tax would be applicable if there is a substantial understatement, as defined in section 6661(b)(1)(A). Under that provision, the substantial understatement in any of petitioners' taxable years under consideration must exceed the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Because of agreements of the parties, concessions on brief by respondent, and this opinion, we leave it to the parties to compute whether a substantial understatement exists in any of the years under consideration as part of the Rule 155 computations. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. These cases are consolidated for purposes of trial, briefing, and opinion. Separate notices of deficiency were issued because Mrs. Hefti did not join Mr. Hefti in the filing of the 1987 return, whereas the 1986 and 1988 returns were jointly filed. Although separate petitions were filed, the issues in the two cases are identical.↩
1. Plus 50 percent of the interest due on any underpayment redetermined.
Petitioners argued that this Court does not have jurisdiction over the 1987 taxable year. We find this argument to be without merit.↩
2. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
3. For convenience and enhanced continuity, we render general background facts and then address the specific facts concerning each issue, along with our opinion and conclusions, in separately titled segments.↩
4. For convenience we have combined our findings of fact and legal discussion regarding petitioners' "Cost of Goods Sold".↩
1. Although the total disputed items are $ 2,044.68, respondent, because of use of a percentage type disallowance, determined an aggregate disallowance of $ 1,970. Because respondent has not moved for an increased deficiency, the amount in dispute is limited to $ 1,970.↩
5. Sec. 274(e)(1) was repealed by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 142(a)(2)(A)↩, 100 Stat. 2085, 2118, for all taxable years beginning after Dec. 31, 1986.
6. See discussion infra↩ pp. 20-21.
7. For purposes of the Rule 155 computations, the claimed business to personal usage ratio of approximately two-thirds to one-third results in an allowance of one-half of the disputed cleaning supplies total for each year.↩
8. Hefti v. Commissioner, T.C. Memo. 1988-22, affd. without published opinion 894 F.2d 1340 (8th Cir. 1989), cert. denied 495 U.S. 933↩ (1990).
9. The photographs were received for the limited purpose of showing the equipment in use because petitioner could not clearly or concisely identify that the photographs were taken during the period under consideration. Further, the photographs do not provide a complete picture of the relationship of the equipment to the layout of the room or the continuity of the use of the equipment as between the many rooms in question. Additionally, petitioners have testified that the use has changed and has been reduced with the passage of time.↩
10. The Government has been identified as "Commissioner of Internal Revenue", "United States of America", "Internal Revenue Service", and "Respondent" in the different proceedings under consideration. In order to avoid confusion, we use the term "respondent" as synonymous with "Government" or "Commissioner", as opposed to Mr. and Mrs. Hefti, who have been designated "petitioners", irrespective of whether this or other proceedings are being referenced.↩
11. Petitioners were granted reconsideration on Mar. 31, 1992. Hefti v. McGrath, 784 F. Supp. 1426 (E.D. Mo. 1992), affd. 982 F.2d 525↩ (8th Cir. 1993).